**GOLDMAN, ANTONETTI, FERRAIUO-LI, AXTMAYER & HERTELL, A PARTNERSHIP, Plaintiff, Appellee,**

v.

**MEDFIT INTERNATIONAL, INC., et al., Defendants, Appellees,**

**Hector Rodriguez, Defendant, Appellant.**

**No. 92–1458.**

United States Court of Appeals, First Circuit.

Submitted Nov. 4, 1992.

Decided Jan. 6, 1993.

Hector L. Rodriguez on brief pro se.

Juan R. Marchand Quintero with whom Rivera Cestero & Marchand Quintero and Miguel J. Rodriguez–Marxuach were on brief for appellees.

Before TORRUELLA, Circuit Judge, CAMPBELL, Senior Circuit Judge, STAHL, Circuit Judge.

STAHL, *Circuit Judge.*

Defendant-appellant Hector Rodriguez ("Rodriguez" or "defendant") appeals from the entry of a default judgment against him in the amount of $91,294.38 plus interest. We affirm.

## I.

### RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

On June 6, 1990, the Puerto Rico law firm of Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell ("GAFAH") [1] filed a complaint against Rodriguez, Randy Smith ("Smith"), George and Lorin Croce, and

---

1. GAFAH was the original plaintiff in this case. However, plaintiff-appellee Goldman, Antonetti, Ferraiuoli & Axtmayer ("GAFA" or "plaintiff") was substituted for GAFAH after Hertell left the partnership in September of 1990.

Medfit International, Inc. ("Medfit"), seeking payment of legal fees totalling $101,-294.38.[2] The complaint alleged that defendants had breached an agreement with Ferraiuoli, Axtmayer & Hertell ("GAFAH's predecessor firm") calling for plaintiff to provide defendants with professional legal services relative to the formation, development, and financing of a latex glove manufacturing business.[3]

Subsequently, Rodriguez moved to dismiss the complaint pursuant to Rules 4(e) and 12(b)(1)–(7) of the Federal Rules of Civil Procedure. After reviewing the record, the district court treated Rodriguez's motion as a motion for summary judgment, and denied it on May 8, 1991.

On August 2, 1991, the district court issued a scheduling order setting a pretrial and settlement conference for November 14, 1991, and a bench trial for December 16, 1991. That order warned the parties that any failure to comply with its provisions could result in the imposition of sanctions under Fed.R.Civ.P. 16(f). This warning was repeated in an October 18, 1991, order which rescheduled the pretrial and settlement conference to November 15, 1991.[4] Despite these warnings, Rodriguez failed to appear for the November 15, 1991, pretrial and settlement conference. Consequently, the district court entered a partial judgment dismissing Rodriguez's counterclaims and cross-claim.[5]

On January 17, 1992, Rodriguez telephoned the district court's chambers to notify the court that he would not appear for the January 21, 1992, trial. Rodriguez did not, however, request a continuance or provide the court with a valid justification for his anticipated absence. Accordingly, when Rodriguez failed to appear for trial, the district court found that he was in default. The district court then held a bench trial on the question of damages, and determined that plaintiff was entitled to recover $91,294.38 plus interest from Rodriguez and the previously defaulted Smith and Medfit. The district court found all three defendants jointly and severally liable for this judgment.

## II.

## DISCUSSION

On appeal, Rodriguez makes three principal arguments: (1) that the district court erred in failing to grant his motion to dismiss; (2) that the district court abused its discretion in dismissing his counterclaims and cross-claim; and (3) that the district court abused its discretion in entering default judgment against him.[6] We discuss each argument in turn.

2. Default was subsequently entered against Smith and Medfit for failure to answer the complaint. The action against George and Lorin Croce was dismissed with prejudice, pursuant to Fed.R.Civ.P. 41(a)(1), after they agreed to pay plaintiff $10,000.00 towards the legal fees due. None of these defendants is a party to this appeal.

3. More specifically, plaintiff claims that it agreed to render professional services on an hourly fee basis, and that its fees would be payable by Rodriguez and Smith personally "until such time as financing was obtained" for their latex glove manufacturing project. Rodriguez, on the other hand, contends to have entered into an oral fee agreement with plaintiff *on behalf of* Medfit Products Puerto Rico, Inc. ("MPPR"). Rodriguez also claims that the agreement set forth a contingent fee arrangement, "said contingency being the successful financing and closing of the proposed latex glove project[,]" and denies that he is or ever was personally responsible for payment of the legal fees owed to plaintiff.

4. The district court later continued the December 16, 1991, trial date until January 21, 1992.

5. In so doing, the district court also took note of Rodriguez's failure to prepare a pretrial order and his failure otherwise to comply with its orders.

6. Rodriguez also litters his brief and reply brief with one-sentence allegations of error that are accompanied by neither argument nor supporting authority. Time and time again, we have warned litigants that "issues raised in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deem waived." *See, e.g., Elgabri v. Lekas,* 964 F.2d 1255, 1261 (1st Cir.1992) (quoting *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990)). Accordingly, we do not address the merits of Rodriguez's one-sentence arguments.

## A. Rodriguez's Motion to Dismiss

Rodriguez first challenges the district court's denial of his motion to dismiss, arguing that the district court erroneously relied on certain allegations contained in Jose A. Axtmayer's unsworn statement signed under penalty of perjury to find: (1) that a genuine, material factual dispute existed over the substance of the oral fee agreement; (2) that Rodriguez was subject to the *in personam* jurisdiction of the district court; and (3) that MPPR was not an indispensable party under Fed.R.Civ.P. 19(b). We disagree with Rodriguez's contentions.

### 1. Standard of Review

There is no dispute that Rodriguez's motion to dismiss was properly treated as a motion for summary judgment. *See* Fed. R.Civ.P. 12(c). Appellate review of a district court order denying a motion for summary judgment is plenary. *Federal Deposit Ins. Corp. v. World Univ. Inc.*, 978 F.2d 10, 13 (1st Cir.1992). Summary judgment shall be granted only when the record demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party moving for summary judgment "bears both the initial and the ultimate burden of demonstrating its legal entitlement to summary judgment." *Lopez v. Corporacion Azucarera de Puerto Rico*, 938 F.2d 1510, 1516 (1st Cir.1991). Furthermore, like the district court, we " 'must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.' " *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991) (citing *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990)), *cert. denied,* —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). "Nonetheless, the non-movant cannot content himself with unsupported allegations; rather, he must set forth specific facts, in suitable evidentiary form, in order to establish the existence of a genuine issue for trial." *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 352 (1st Cir.1992).

### 2. The Unsworn Statement

■ Axtmayer's unsworn statement signed under penalty of perjury was submitted in support of plaintiff's opposition to Rodriguez's motion to dismiss.[7] Rodriguez argues that the district court's reliance on the allegations contained in Axtmayer's unsworn statement constitutes an abuse of discretion because the statement fails to conform to the requirements of Fed. R.Civ.P. 56(e). We disagree.

Under federal law, an unsworn statement signed under penalty of perjury may be used, in lieu of a sworn statement or affidavit, to support or oppose a motion for summary judgment. *See* 28 U.S.C. § 1746;[8] *see also Pfeil v. Rogers*, 757 F.2d

---

7. Axtmayer's statement alleges, *inter alia,* that Rodriguez and Smith retained GAFAH's predecessor firm to represent them in connection with the establishment of a latex glove manufacturing facility in Puerto Rico. Axtmayer further alleges that the firm agreed to provide the professional services requested "on a per hour fee basis to be invoiced monthly and payable by Rodriguez and Smith until such time as financing was obtained for the project." Finally, Axtmayer states that after Medfit Products of Puerto Rico was incorporated in Puerto Rico, Rodriguez and Smith agreed that they, along with Medfit and George and Lorin Croce, "were [the firm's] clients in their individual capacities and were personal[ly], jointly and severally responsible for the payment of the services rendered and expenses incurred by [the firm] as a result of their representation."

8. In relevant part, 28 U.S.C. § 1746 provides:
    Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same ... such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
    . . . .
    If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under pen-

850, 859 (7th Cir.1985) (holding that an affidavit failing to satisfy the "technical, non-substantive requirements of execution" may be considered as part of a party's opposition to a motion for summary judgment provided the affidavit complies with 28 U.S.C. § 1746), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986); *Davis v. Frapolly,* 756 F.Supp. 1065, 1067 (N.D.Ill.1991) (holding that unsworn statements signed under penalty of perjury may be considered as evidence in support of a motion for summary judgment). Because Axtmayer's unsworn written statement meets the requirements of 28 U.S.C. § 1746, the district court was entitled to give it the same weight as an affidavit when it considered defendant's motion. Therefore, because Axtmayer's unsworn statement established the existence of a genuine, material factual dispute concerning the substance of the parties' oral fee agreement, the district court properly denied Rodriguez's motion to dismiss.

3. In Personam Jurisdiction

■ As noted, Rodriguez also challenges the district court's ruling that it had personal jurisdiction over him. In so doing, Rodriguez first contends that the district court should not have considered the allegations in Axtmayer's statement when it decided the question of *in personam* jurisdiction.[9] However, Rodriguez's argument is undermined by the fact that a district court may go beyond the four corners of the pleadings and consider materials presented in support of a motion to dismiss for lack of *in personam* jurisdiction. *See American Express Int'l, Inc. v. Mendez–Capellan,* 889 F.2d 1175, 1178 (1st Cir. 1989) (affidavits presented on a motion to dismiss for lack of *in personam* jurisdic-

tion, which was converted to a motion for summary judgment, deemed to be "available for either motion"). Accordingly, the district court committed no error in considering the Axtmayer statement.

■ Rodriguez's attack on the merits of the district court's ruling is equally unavailing. "It is well established that in diversity cases, 'the district court's personal jurisdiction over a nonresident defendant is governed by the forum's long-arm statute.' " *Pizarro v. Hoteles Concorde Int'l, C.A.,* 907 F.2d 1256, 1258 (1st Cir.1990) (quoting *Mangual v. General Battery Corp.,* 710 F.2d 15, 19 (1st Cir.1983)). Rule 4.7(a)(1) of the Puerto Rico Rules of Civil Procedure, the Commonwealth's long-arm statute, allows Puerto Rico courts to assert personal jurisdiction over a non-resident defendant "if the action or claim arises because said person ... [t]ransacted business in Puerto Rico personally or through an agent...." P.R.Laws Ann. tit. 19, App. III, R. 4.7(a)(1) (1983); *see also Pizarro,* 907 F.2d at 1258. However, for such an assertion of jurisdiction to be permissible, two additional tests must be met. First, plaintiff's cause of action "must arise out of the defendant's action within the forum state." *Id.* (quoting *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 905 (1st Cir.1980)). In addition, of course, the contacts among the non-resident defendant, forum, and cause of action must rise to a level where the due process requirements of "fair play and substantial justice," *see International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), are met. *See id.*[10]

■ Here, there is undisputed record evidence that Rodriguez initiated and personally participated in the negotiations which

---

alty of perjury that the foregoing is true and correct. Executed on (date).
(Signature)".

9. Axtmayer's statement asserts that Rodriguez personally initiated the negotiations which led to the representation and fee agreements with GAFAH's predecessor firm in a 1987 visit to the firm's offices.

10. The Supreme Court has elaborated upon this "minimum contacts" rule:

The application of [the minimum contacts] rule will vary with the quality and nature of the defendant's activity, but it is essential that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.
*Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

led to the fee agreement which is the subject of this litigation, and that at least some portion of these negotiations took place at GAFAH's predecessor firm's offices in Puerto Rico. Thus, it is clear that Rodriguez is subject to the reach of 4.7(a)(1) and that the cause of action arose out of Rodriguez's action in the forum state. Furthermore, the record reveals that Rodriguez was personally and continuously involved in plaintiff's efforts to assist in the formation, development, and financing of MPPR, which was to be a Puerto Rico corporation.[11] This fact, when coupled with Rodriguez's solicitation and subsequent retention of plaintiff, leaves little doubt that Rodriguez purposefully availed himself "of the privilege of conducting activities within the forum ..., thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1240. Therefore, we find no error in the district court's conclusion that its assertion of *in personam* jurisdiction over Rodriguez would not offend either Puerto Rico's long-arm statute or the Due Process Clause of the United States Constitution.

### 4. Rule 19(b)

█ Finally, Rodriguez argues that the district court erred in refusing to grant his motion to dismiss on the basis of plaintiff's failure to join MPPR as a non-diverse indispensable party under Fed.R.Civ.P. 19(b).[12] This argument does not require extended discussion.

The district court ruled that because defendants and the non-diverse MPPR were alleged to be jointly and severally liable for the legal fees owed plaintiff, joinder of

MPPR was not mandatory, but was merely permissive. The district court's ruling on this issue is patently correct. *See Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, ——, 111 S.Ct. 315, 316, 112 L.Ed.2d 263 (1990) (citing to the Advisory Committee Notes to Rule 19(a), which explicitly state that "a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability."). Accordingly, we find no error in the district court's refusal to grant Rodriguez's motion insofar as it is premised on Fed.R.Civ.P. 19(b).

### B. *Dismissal of Rodriguez's Counterclaims and Cross-claim*

█ As a result of Rodriguez's failure to appear at the scheduled pretrial and settlement conference, his failure to prepare a pretrial order, and his failure to otherwise comply with the court's orders, the district court dismissed with prejudice Rodriguez's counterclaims and cross-claim. The dismissal was premised upon Fed.R.Civ.P. 16(f).[13] Rodriguez claims that the district court's imposition of these sanctions constitutes an abuse of discretion. Again, we disagree.

As an initial matter, we note that "[t]he proper performance of the case-management function requires that the trial court be allowed great latitude in applying Rule 16(f)." *Veranda Beach Club v. Western Surety Co.*, 936 F.2d 1364, 1370 (1st Cir. 1991); *see also Barreto v. Citibank, N.A.*, 907 F.2d 15, 16 (1st Cir.1990) (taking note of the "well established principle that discovery orders, other pre-trial orders, and, indeed, all orders governing the manage-

---

**11.** These activities took place over a two-year span and allegedly generated the $101,294.38 of unpaid fees and expenses plaintiff is seeking.

**12.** Joinder of MPPR, a Puerto Rico corporation, would have destroyed the district court's subject matter jurisdiction in this diversity case.

**13.** In pertinent part, Fed.R.Civ.P. 16(f) provides:

If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to

participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D)....

The orders provided for in Fed.R.Civ.P. 37(b)(2) include orders "striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, *or dismissing the action or proceeding or any part thereof,* or rendering a judgment by default against the disobedient party." Fed.R.Civ.P. 37(b)(2)(C) (emphasis added).

ment of a case are enforceable under pain of sanction for unjustifiable violation.''). As such, we review a district court's selection and imposition of sanctions only for abuse of discretion. *See National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); *Veranda Beach Club*, 936 F.2d at 1370.

We also recognize that " 'dismissal with prejudice is a harsh sanction which runs counter to our strong policy favoring the disposition of cases on the merits.' " *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 10 (1st Cir.1991) (quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 647 (1st Cir.1990)). Nonetheless, the sanction of dismissal "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League*, 427 U.S. at 643, 96 S.Ct. at 2781; *see also Marx*, 929 F.2d at 10; *Barreto*, 907 F.2d at 16. Conduct which may warrant dismissal of a claim with prejudice includes " 'disobedience of court orders, [disregarding] warnings, [and] contumacious conduct....' " *Figueroa Ruiz*, 896 F.2d at 648 (quoting *Cosme Nieves v. Deshler*, 826 F.2d 1, 2 (1st Cir.1987)).

As detailed above, the district court issued two separate orders which notified the parties as to the date and time of the November 15, 1991, pretrial and settlement conference. In addition, both orders provided explicit warnings to the parties that failure to comply could result in the imposi-

tion of sanctions under Fed.R.Civ.P. 16(f). Despite ample notice and repeated warnings, Rodriguez did not attend the pretrial and settlement conference. Nor did he provide the court with either proper notice that he would not appear or a compelling justification for his absence. As such, we cannot say the district court abused its discretion in construing Rodriguez's absence as "a willful disregard of the Court's procedure and time" and therefore dismissing his counterclaims and cross-claim.[14]

### C. Default Judgment

■ On February 28, 1992, the district court entered default judgment against Rodriguez for his failure to appear at trial. Rodriguez challenges this order, arguing that the entry of default constitutes an abuse of discretion both because (1) the district court failed to give him notice pursuant to Fed.R.Civ.P. 55(b)(2), and (2) plaintiff failed to prove its case on the merits at trial.[15] Here too, Rodriguez's arguments are unavailing.

In pertinent part, Fed.R.Civ.P. 55(b)(2) provides: "[If] the party *against whom judgment by default is sought* has appeared in the action, the party ... shall be served written notice *of the application for judgment* at least 3 days prior to the hearing on such application." (Emphasis supplied). By its very terms, therefore, Rule 55(b)(2) does not apply where, as here, there is no motion for default pending and where the court has, on its own motion, found a party to be in default for a failure to appear. Pertinent authority supports

---

**14.** We do note that on November 14, 1991, at 3:22 p.m., Rodriguez attempted, *via* telecopier, to file with the district court a motion for an extension of time in which to compromise the controversy. However, the record indicates that defendant's motion was not actually received and filed by the district court until November 15, 1991, at 3:14 p.m., *after* the scheduled 2:30 p.m. conference had already taken place. Rodriguez also claims that at the same time he transmitted his motion, he notified the court that he would not be attending the conference scheduled for the following day. However, even were we to credit this assertion, it would not provide us with a sufficient basis for determining that the district court's actions were an abuse of discretion.

**15.** Rodriguez also objects to the holding of a bench trial despite the fact that he had properly requested a jury trial in his answer. However, "after a default judgment has been entered under Fed.R.Civ.P. 37(b)(2), a party has no right to jury trial under either Fed.R.Civ.P. 55(b)(2), ... or the Seventh Amendment." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990), *cert. denied*, — U.S. —, 111 S.Ct. 1019, 112 L.Ed.2d 1100 (1991); *see also Eisler v. Stritzler*, 535 F.2d 148, 153 (1st Cir.1976) (holding that after entry of a default judgment, a hearing, but not a jury trial, is required to assess damages).

such a construction of the Rule. *See Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.,* 856 F.2d 873, 877 (7th Cir.1988) (notice requirement of Rule 55(b)(2) does not apply where district court entered default order on its own motion) (citing *Tolliver v. Northrop Corp.,* 786 F.2d 316, 318 (7th Cir.1986)); *see also Ringgold Corp. v. Worrall,* 880 F.2d 1138, 1141–42 (9th Cir.1989) (notice requirement of Rule 55(b)(2) does not apply where party is defaulted for failing to attend the first day of a trial scheduled months before); *Brock v. Unique Racquetball and Health Clubs, Inc.,* 786 F.2d 61, 65 (2d Cir.1986) (notice requirement of Rule 55(b)(2) does not apply where party is defaulted for defense counsel's and parties' failure to appear at a trial that already has commenced). Accordingly, Rule 55(b)(2) does not provide us with a basis for setting aside the district court's entry of default.[16]

 Rodriguez also argues that the entry of default against him was an abuse of discretion because plaintiff failed to prove its case on the merits at trial. Defendant's argument ignores the maxim that an entry of a default against a defendant establishes the defendant's liability. *See Brockton Savings Bank v. Peat, Marwick, Mitchell & Co.,* 771 F.2d 5 (1st Cir.1985) ("[T]here is no question that, default having been entered, each of [plaintiff's] allegations of fact must be taken as true and each of its [ ] claims must be considered established as a matter of law."), *cert. denied,* 475 U.S. 1018, 106 S.Ct. 1204, 89 L.Ed.2d 317 (1986); *see also United States v. DiMucci,* 879 F.2d 1488, 1497 (7th Cir.1989) ("As a general rule, a default judgment establishes, as a matter of law, that defendants are liable to plaintiff as to each cause of action alleged in the complaint."); *Eisler v. Stritzler,* 535 F.2d 148, 153 (1st Cir.1976) (noting that "[t]he default judgment on the well-pleaded

allegations in plaintiff's complaint established ... defendant's liability."). Thus, the district court's entry of default established Rodriguez's liability for the legal fees due.

### III.

### CONCLUSION

For the foregoing reasons, the challenged district court orders are affirmed.

*Affirmed. Double costs to appellee.*[17]

---

**16.** Our refusal to apply the notice requirement of Rule 55(b)(2) to this case can hardly be viewed as unfair to Rodriguez. Clearly, the purpose of Rule 55(b)(2) is to make certain that a defaulted party is on notice of the possibility that a default judgment might be entered against him/her. Here, Rodriguez admitted in an affidavit to his awareness "that the court had positioned itself to hold [Rodriguez] liable *by*

*default or otherwise"* at the time he failed to appear for trial. Thus, the situation against which Rule 55(b)(2) guards was not present in this instance.

**17.** We award double costs in response to appellee's well-grounded request for sanctions under Fed.R.App.P. 38.