**Laura OWENS, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

No. 93–CV–950.

United States District Court, N.D. New York.

Oct. 11, 1994.

Mark A. Wolber, Utica, NY, for plaintiff.

Metropolitan Life Ins. Co., New York City (Alan E. Lazarescu, Cornelia E. Dude, of counsel), for defendant.

*MEMORANDUM–DECISION and ORDER*

HURD, United States Magistrate Judge.

## I. *Introduction.*

This action was originally commenced in New York State Supreme Court, Oneida County. The complaint alleges a cause of action for breach of contract under state law. It is alleged that defendant's denial of claims for benefits under a Long Term Disability Insurance policy was unjustified and in bad faith. On July 19, 1993, the action was removed to this court pursuant to the provisions of Title 28 U.S.C. §§ 1331, 1441, and 1445. Specifically, it was removed on the grounds that the action arose under the Employee Retirement Income Security Act ("ERISA"), Title 29 U.S.C. § 1001 et seq. Plaintiff never amended her complaint to allege an ERISA cause of action, and the time to amend has expired.

Defendant moves for summary judgment pursuant to Federal Rules of Civil Procedure 56(b) on two grounds: (1) plaintiff's breach of contract cause of action is preempted by ERISA; and (2) defendant's denial of benefits was not arbitrary or capricious. In support of the motion, defendant submits affidavits, Rule 10(j) Statement and memorandum of law. Attached to the affidavits as exhibits are the documents that the defendant relied on to deny benefits to the plaintiff. In opposition, plaintiff submitted her own affidavit which also includes rather voluminous medical reports, many if not all of which were submitted to the defendant in support of her claim for benefits. Plaintiff did not submit a Rule 10(j) statement or a memorandum of law.

## II. *Summary Judgment Standard.*

A motion for summary judgment may be granted only when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, Partnership v. Medfit Int'l, Inc.,* 982 F.2d 686, 689 (1st Cir.1993); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the summary judgment motion." *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). In other words, a motion for summary judgment shall be granted only "when the pleadings, evidence obtained through discovery, and affidavits show that there is no genuine issue as to any material fact," *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991), and the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

"In determining how a reasonable jury would decide, the court must resolve all ambiguities and draw all inferences against the moving party." *Lang,* 949 F.2d at 580. However, when the moving party has met the burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also Liberty Lobby,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. At that point, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* The court's function "is not . . . to weigh the evidence and determine the truth of the matter," *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2511, but "to determine whether there does indeed exist a genuine issue for trial." *Id.*

## III. *Facts.*

On May 27, 1991, plaintiff, Laura Owens ("Owens"), was injured in an automobile accident. As a result of the accident, she received injuries to her back and right knee. On December 9, 1991, Owens completed a Statement of Claim, seeking disability benefits under Amcena Corporation's employee welfare benefit plan ("Plan") which is insured by defendant, Metropolitan Life Insurance Company ("MetLife"). To be eligible for Long Term Disability benefits under this Plan, Owens must require the regular care and attendance of a doctor, and (1) be completely and continuously unable to perform

each of the material duties of her regular job; or (2) suffer a 50% loss of earnings capacity.

Prior to the accident, Owens had been working 40 hrs/wk and earning $20,000/yr with full benefits as a retail group manager for Steinbach. According to Owens, her attending physicians, and her physical therapist, she was diagnosed as being disabled and not able to resume working full time until June 14, 1993.

The medical records gathered by MetLife pursuant to information provided by Owens were submitted for review to independent reviewing physicians, the Underwriting Medical Actuarial Consultants ("UMAC"). In a report dated July 2, 1992, it was the opinion of these consultants that the medical records lacked objective medical evidence of physical disorders that could cause a disability. On July 20, 1992, MetLife forwarded the reviewing physicians' report to Warren T. Rinehart, M.D. (Owens' personal orthopedic physician), to enable Dr. Rinehart to comment upon the reviewers' findings and to submit additional medical evidence as would demonstrate a disability. Dr. Rinehart replied with a letter dated August 11, 1992, stating, among other things, that he disagreed with UMAC's report. No additional medical evidence was submitted by Dr. Rinehart. In a letter dated August 25, 1992, MetLife denied Owens' claim for disability, benefits.

On September 25, 1992, Owens wrote to MetLife requesting review of the denial of her claim. On November 23, 1992, MetLife received a copy of Dr. Rinehart's instructions that Owens should consult a physical therapist for "strengthening" and "work conditioning," accompanied by a Functional Capacity Evaluation performed by Patricia Dispirito, P.T. Ms. Dispirito's conclusion was that Owens "is unable to work at this time." Having considered this information, MetLife advised Owens by letter dated December 1, 1992, that no basis had been found to conclude differently than that the decision to deny her claim was correct.

In a letter dated January 25, 1993, directed to the defendant, plaintiff's attorney disagreed with the decision to deny benefits, and requested that the denial be reviewed. On February 3, 1993, defendant responded by advising the plaintiff's attorney that the reports of Dr. Rinehart and Ms. Dispirito, among others, had been reviewed and requested that recent objective test reports or evaluations be submitted. Defendant received no further correspondence from plaintiff's attorney.

## IV. Discussion.

### A. ERISA.

The first issue is whether state statutory and common law causes of action, such as those in the instant matter, are preempted by ERISA. ERISA comprehensively regulates employee welfare benefit plans that provide "medical, surgical or hospital care, or benefits in the event of sickness, accident, disability [or] death ..." 29 U.S.C. § 1002(1).

In *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court considered whether a participant in an ERISA employee benefit plan could recover benefits based upon the state common law breach of contract action and extracontractual damages based upon Mississippi's "bad faith" statute. The Court held that ERISA preempted state law claims for failure to pay benefits. *Id.* at 57, 107 S.Ct. at 1558. The civil enforcement provision of ERISA, 29 U.S.C. § 1132(a) is the exclusive vehicle for action by ERISA–plan participants and beneficiaries asserting improper processing of a claim for benefits. Varying state causes of action for claims within the scope of § 1132(a) would pose an obstacle to the purposes and objectives of Congress, and therefore, are preempted. *Id.* at 52, 107 S.Ct. at 1555–56. Thus, any lawsuit by a plan participant to recover benefits from an employee benefit plan falls under ERISA, 29 U.S.C. § 1132(a)(1)(B), which provides the exclusive cause of action for resolution of such disputes. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62, 107 S.Ct. 1542, 1545–46, 95 L.Ed.2d 55 (1987).

Therefore, unless plaintiff's common law cause for breach of contract falls under an exemption to ERISA, it is expressly preempted. Not all state law claims brought in an action involving an employee benefit

plan "relate to" that plan within the meaning of the preemption provision of ERISA; rather, such claims generally "relate to" a benefit plan when they arise out of some action taken in the execution or administration of the plan.

An example of a claim not relating to the benefit plan is *McNamee v. Bethlehem Steel Corp.*, 692 F.Supp. 1477 (E.D.N.Y.1988). In *McNamee*, the plaintiff's claims did not relate to the defendant's pension plan within the meaning of ERISA, because he did not seek benefits under the plan, but rather damages for defendant's failure to permit vesting of the pension as promised. *Id.* at 1478. This distinguished his case from those in which ERISA preempted state law breach of contract of claims. In those cases the contract allegedly breached was the pension plan itself, whereas he was claiming a breach of a collateral employment agreement. *Id.* at 1479.

Unfortunately for the plaintiff, the common law causes of action she has raised alleging that the denial of her claim for benefits is unjustified and in bad faith, clearly relate in subject matter to the employee benefit Plan. She is seeking the benefit of the defendant's Plan. A resolution of the claim will determine whether any benefits should be paid and will directly affect the administration of benefits under the Plan. Thus, the alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meets the criteria for preemption under ERISA.

█ Bad faith applies to any breach of contract; not merely a breach of an insurance contract. The common law of bad faith, even if associated with the insurance industry, has developed from general principles of tort and contract law available in any breach of contract case. The uniformity of decisions which the act is designed to foster will help to predict the legality of proposed actions without the necessity of reference to varying state laws. *Pilot Life Ins. Co.*, 481 U.S. at 54, 107 S.Ct. at 1556–57.

ERISA preempts a state breach of contract claim and applies to the instant action. Because the plaintiff "did not assert any of the several causes of action available to (her)

under ERISA," *Pilot Life Ins. Co.*, 481 U.S. at 44, 107 S.Ct. at 1551, and her time to amend her complaint has expired, summary judgment must be granted in favor of Met-Life.

**B.** *Arbitrary and Capricious.*

█ Although this motion has been resolved under the preemption by ERISA, a comment is in order on whether defendant's factual determination that plaintiff's claim should be denied was, as a matter of law, not arbitrary and capricious given the information that was before MetLife when the claim was denied.

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) sets forth the proper standard of review for actions challenging a denial of benefits under 29 U.S.C. § 1132(a)(1)(B). Such actions are to be "reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. at 956–57. Since discretionary authority is given to the Plan administrators in this case, such authority will be given full force and effect, unless it can be shown that the determination was arbitrary and capricious.

All of Owens' physicians (Dr. Daniel Dischiavo, Dr. Arne Pedersen, and Dr. Warren Rinehart) agree that it is impossible for Owens to perform, completely and continuously, each of the material duties of her regular job as a retail group manager for Steinbach. As claimed by Owens, some of her material duties include: unloading trucks, doing floor moves, climbing ladders, lifting heavy objects, and standing or walking for long periods of time, all of which she is now unable to do. Owens stated in her letter for review that she needed regular care and attendance of a doctor, and that she has suffered more that a 50% loss of earnings because she was unable to return to work. Owens finds it unreasonable that doctors who never examined her or saw her in person could draw different conclusions than the three physi-

cians that regularly treated her since the accident, using the same data.

Information on which MetLife's denial was based included the report of the UMAC. MetLife states UMAC's opinion that Owens' medical records lacked objective medical evidence which would support a conclusion that Owens was disabled at any relevant time.

All three reviewing physicians for UMAC claim that Owens' symptoms do not correlate with the findings of her own physicians, and that such restrictions claimed and complaints of pain presented are not accomplished by any evidence of physical disorders which could reasonably be expected to produce such restrictions and complaints. MetLife afforded Owens' personal orthopedic physician, Dr. Rinehart, an opportunity to comment upon UMAC's reports as well as an opportunity to submit additional medical evidence. Dr. Rinehart responded by expressing his disagreement with UMAC's report, but he did not submit additional medical evidence.

On November 23, 1992, MetLife received a copy of a prescription pad page bearing Dr. Rinehart's instruction that Owens should consult a physical therapist, Patricia Dispirito, P.T. Ms. Dispirito's conclusion was that Owens "is unable to work at this time." MetLife argues that this evaluation of Owens does not reflect that Ms. Dispirito had been provided with or otherwise had the opportunity to examine Owens' medical records. MetLife contends that Ms. Dispirito's evaluation was performed in October 1992, and addresses only her condition at that juncture.

The UMAC's evaluation of the plaintiff's injuries and her own personal physician's medical reports are in direct conflict with each other. Therefore, a genuine issue exists as to this particular factual matter and a reasonable trier of fact may find for either side. MetLife's decision simply came down to a choice between the position of UMAC, MetLife's own independent medical consultants, and the position of Owens' own physicians. MetLife's decision to deny benefits would be arbitrary and capricious if Owens can demonstrate that the denial decision was implausible enough to be ascribed to a difference in view. Such issues of fact should be brought before the factfinder to decide after both sides have a full opportunity to be heard.

## CONCLUSION

The function of the court on this motion is to determine whether there is a genuine factual dispute. The undisputed facts presented demonstrate that ERISA applies exclusively to the instant action. Owens has failed to state a cause of action under ERISA, and the complaint must be dismissed.

Therefore, it is

ORDERED that the complaint be dismissed.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.