**Robert E. SHERRY, Plaintiff,**

v.

**CENTRAL NATIONAL BANK OF CANAJOHARIE, Defendant.**

No. 94–CV–1246.

United States District Court, N.D. New York.

May 25, 1995.

Robert E. Sherry, Ilion, pro se.

MacKenzie & Tallent, Canajoharie, NY, for defendant; Richard L. Rodgers, of counsel.

### MEMORANDUM–DECISION AND ORDER

HURD, United States Magistrate Judge.

### I. *Introduction.*

This action was originally commenced in New York's Small Claims Court in the County of Montgomery on September 6, 1994. The complaint alleges a cause of action for breach of contract under state law.

On September 26, 1994, the action was removed by the defendant to this court pursuant to the provisions of Title 28 U.S.C. §§ 1331 and 1441 upon payment of the $120.00 filing fee. Specifically, it was removed on the grounds that the action arose under the Employee Retirement Income Security Act ("ERISA"), Title 29 U.S.C. § 1001 et seq. Defendant moved and plaintiff cross-moved for summary judgment pursuant to Federal Rules of Civil Procedure 56—plaintiff claiming no issue of fact that a breach of contract occurred; and defendant claiming a failure to state a claim upon which relief may be granted.

### II. *Summary Judgment Standard.*

A motion for summary judgment may be granted only when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, Partnership v. Medfit Int'l, Inc.,* 982 F.2d 686, 689 (1st Cir.1993); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "[I]n assessing the record to determine whether there is a genuine issue as to any material fact, the trial court is required to resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." *LaFond v. General Physics Services Corp.,* 50 F.3d 165, 171 (2d Cir.1995) (citing *Gallo v. Prudential Residential Services, Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994)); *see also Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). In other words, a motion for summary judgment pursuant to Fed.R.Civ.P. 56 shall be granted only "when the pleadings, evidence obtained through discovery, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law." *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991).

"The judge's function is not ... to weigh the evidence and determine the truth of the matter," *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), such "is the prerogative of the finder of fact." *Murphy v. Provident Mutual Life Ins. Co.,* 923 F.2d 923, 930 (2d Cir.1990) (Kearse, J., dissenting), *cert. denied,* 502 U.S. 814, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991). "[T]he trial court's task at the summary judgment motion stage ... is carefully limited to discerning whether there are any genuine issues of material fact to be tried, *not* to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *LaFond,* 50 F.3d at 171 (quoting *Gallo,* 22 F.3d at 1224) (emphasis in original).

Thus, once the moving party has met its burden, if the nonmoving party cannot produce sufficient evidence to support the jury verdict, summary judgment is prop-

er. *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2510–11. However, when the moving party has met the burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also Liberty Lobby,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. At that point, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.*

■ In a case where both sides have moved for summary judgment, as is the case at bar, each side must sustain its burden of proving the absence of disputed issues of material fact in order to be successful.

### III.  *Facts.*

Robert Sherry was an employee at the Central National Bank in Canajoharie, New York ("Central") for several years. He joined the "Profit Sharing and 401–k Trusteed Plan" ("Plan") offered through his employer on July 20, 1987, and remained a participant in that Plan until his termination by Central on January 27, 1994, by which time he had become 100% vested in the plan.

Plaintiff claims that after his termination, Central wrongly retained $257.01 of funds contributed to his Plan which plaintiff claims he is entitled to. Central argues that according to the terms of the Plan, the $257.01 constituted excess funds which were required

1.  Section 4.9 of the Plan deals with the calculation of this amount. It reads in part as follows:

> (d) For purposes of applying the limitations of Code Section 415, "415 Compensation" shall include the Participant's wages, salaries, ... paid or accrued during the "limitation year".
> "415 Compensation" shall exclude:
> (1)(A) contributions made by the Employer to a plan of deferred compensation to the extent that, before the application of the code Section 415 limitations to the Plan, the contributions are not includable in the gross income of the Employee for the taxable year in which contributed,
> (B) contributions made by the Employer to a plan of deferred compensation to the extent that all or a portion of such contributions are recharacterized as a voluntary Employee contribution,

to be forfeited under the conditions that were present at the time of his termination.

### IV.  *Discussion.*

The Internal Revenue Code limits the amount of contributions that may be made to an employee benefit plan during one year. The Internal Revenue Code refers to these contributions made during a one year interval as "annual additions." Section 415(c) sets this limit, stating in part:

> (1) In general. Contributions and other additions with respect to a participant exceed the limitation of this subsection if, when expressed as an annual addition (within the meaning of paragraph (2)) to the participant's account, such annual addition is greater than the lesser of—
>
> (A) $30,000, or
>
> (B) 25 percent of the participant's compensation.

26 U.S.C. § 415(c) (1995).

Central calculated plaintiff's 415 Compensation as $17,176.41. (*See* Pl. Not. of Cross–Mot. Ex. P–5). This amount is the compensation amount sought in subsection (B) above. The resulting calculation from subsection (B) (i.e. 25% of that compensation) then works as a ceiling limitation; the maximum amount that may be contributed to a fund during any one year. Thus the higher the 415 Compensation, the higher the annual additions may be during that year until that ceiling reaches $30,000.[1]

> (C) Employer contributions made on behalf of an Employee to a simplified employee pension plan described in Code Section 408(k) to the extent such contributions are excludable from the Employee's gross income,
> (D) any distributions from a plan of deferred compensation regardless of whether such amounts are includable in the gross income of the employee when distributed except any amounts received by an Employee pursuant to an unfunded non-qualified plan to the extent such amounts are includable in the gross income of the Employee;

>         .         .         .         .         .

(*See* Pl. Not. of Cross–Mot. Ex. P–11). Central deducted $3299.33 from plaintiff's gross income for 1993, apparently, from the above-stated exemptions ($2,457.09 from Employee 401(k) deferrals and $842.24 from Employee elective deferrals) to arrive at the calculated 415 compensa-

Central informed plaintiff by letter dated May 18, 1994, from Jean Ward, Personnel Manager, that after determining the maximum allowable annual additions by applying Internal Revenue Code § 415(c)(1)(B) to his 415 Compensation, and comparing that maximum to plaintiff's annual additions,[2] an excess of $257.01 in annual additions was shown to have been contributed. She informed the plaintiff that this amount had to be withdrawn. This was done on December 31, 1993, and put into a suspense account to be redistributed to him in the following year according to the terms of the Plan in order for him to fall within Internal Revenue Code § 415. (*See* Pl.Not. of Cross–Mot. Ex.s P–2, P–5). Subsequent to these funds being transferred to the suspense account, but prior to the redistribution of those funds, plaintiff was terminated from his employment. Since his termination preceded that redistribution, Central deemed those undistributed funds to be forfeited.

The problem then boils down to what should have been done with an admitted excess annual addition to the fund contributed in 1993 beyond the maximum allowed by Internal Revenue Code § 415. The Plan itself explicitly addresses the problem of excessive annual additions. Section 4.10 of the Plan states in part as follows:

(a) If ... the "annual additions" under this Plan would cause the maximum "annual additions" [as calculated under Internal Revenue Code § 415(c) ] to be exceeded for any Participant, the Administrator shall

(1) return any voluntary Employee contributions credited for the "limitation year" to the extent that the return would reduce the "excess amount" in the Participant's accounts

(2) hold any "excess amount" remaining after the return of any voluntary Employee contributions in a "Section 415 suspense account"

(3) use the "Section 415 suspense account" in the next "limitation year" (and succeeding "limitation years" if necessary) to reduce Employer contributions for that Participant if that Participant is covered by the Plan as of the end of the "limitation year", or if the Participant is not so covered, allocate and reallocate the "Section 415 suspense account" in the next "limitation year" (and succeeding "limitation years" if necessary) to all Participants in the Plan before any Employer or Employee contributions which would constitute "annual additions" are made to the Plan for such "limitation year"

(4) reduce Employer contributions to the Plan for such "limitation year" by the amount of the "Section 415 suspense account" allocated and reallocated during such "limitation year".

(*See* Pl. Not. of Cross–Mot. Ex. P–12). While both plaintiff and defendant spend the bulk of their efforts supporting their claims that plaintiff was or was not entitled to the $257.01 contained in the suspense account, respectively, the Court need never reach that issue. For under the circumstances of this case, § 4.10, as interpreted by this Court, did not call for the payment of any funds into the suspense account at all.

Initially, the Court will presume that plaintiff's annual additions exceeded the statutory maximum annual additions by $257.01 since this figure is undisputed. Additionally the Court notes that while the parties do not place at issue which party was responsible for the addition that caused the overage,[3] the

tion. (*See* footnote 1; *see also* Pl.Not. of Cross–Mot. Ex.s P–5, P–6).

**2.** Central broke down plaintiff's "annual additions" for 1993 as follows:

| | |
|---|---|
| (a) Employee 401(k) deferrals | $2,457.09 |
| (b) Employer matching contributions | 409.54 |
| (c) Employee elective deferral | 842.24 |
| (d) Employer non-elective contribution | 842.24 |
| TOTAL ANNUAL ADDITIONS | $4,551.11 |

Central found this total to be $257.01 in excess of the maximum annual additions allowed by § 415 for that year. The Court will not pursue the accuracy of Central's calculation under § 415. (*See* Pl. Not. of Cross–Mot. Ex. P–5).

**3.** In fact the plaintiff sets forth in his statement of material facts that the moneys placed in the suspense account "consisted of contribution made by Defendant, as employer." (Pl.R. 7.1(f) state. at ¶ 10).

source of the contribution is of no concern under § 4.10. Even if an addition by the employer was the last addition made to the fund, and thus caused an excess to occur, § 4.10 specifically states the procedure for rectifying the excess without reference to the time of deposit. Therefore this issue will not be broached by this Court.

■ The Court must look to § 4.10 to determine the steps mandated once an excess accrued. Section 4.10(a) clearly sets out a "pecking order" from whence funds are to be taken to rectify the excess. Section (a)(1) requires any excesses to be paid out of voluntary employee contributions first, if any contributions so existed. (*See* § 4.10(a)(1) supra). Recall that according to defendant, plaintiff's "annual additions" for 1993 were as follows:

| | | |
|---|---|---|
| (a) | Employee 401(k) deferrals | $2,457.09 |
| (b) | Employer matching contributions | 409.54 |
| (c) | Employee elective deferral | 842.24 |
| (d) | Employer non-elective contribution | 842.24 |
| | TOTAL ANNUAL ADDITIONS | $4,551.11 |

(Pl. Not. of Cross–Mot. Ex. P–5; *see also* footnote 1). The question for the Court then boils down to which of the two employee contributions above, if any, are voluntary employee contributions. Although no guidance was forthcoming from either party as to the classification of the amounts listed above, the Court must endeavor to classify them in terms of the plan. Thus, it appears that according to item (c) plaintiff had voluntary employee contributions—referred to as employee elective deferrals—of $842.24. This was an amount contributed by plaintiff of his own volition. It was contributed by plaintiff over and above that amount contributed through regular wage deductions—which appear to be shown above in item (a) as Employee 401(k) deferrals. Section 4.10 mandates that the $257.01 should have been deducted from plaintiff's voluntary contributions and refunded to plaintiff, thereby bringing plaintiff's annual additions to within the statutory maximum. Therefore, this amount should have been refunded to plaintiff out of the $842.24 amount listed above.

Central, for reasons unknown, avoided § 4.10(a)(1) which required a return of the excess to plaintiff, and applied (a)(2) which requires Central to "hold any 'excess amount' *remaining after the return of any voluntary Employee contributions* in a 'Section 415 suspense account'" (emphasis added) as if (a)(1) had already been applied and the voluntary Employee contributions had already been refunded. (*See* Pl. Not. of Cross–Mot. Ex. P–12). Central took the excess and held that amount in a Section 415 suspense account. Once in the suspense account, Central may or may not be right in arguing that plaintiff forfeits those funds due to his termination. This Court need not address that issue. The problem remains that those funds should not have reached the suspense account at all. They should have been refunded to plaintiff pursuant to Plan § 4.10(a)(1).

Therefore, it is

ORDERED that

1. Defendant's motion for summary judgment is **DENIED;**

2. Plaintiff's cross-motion for summary judgment is **GRANTED;**

3. The Clerk is directed to enter judgment in favor of the plaintiff in the sum of $257.01 plus interest from December 31, 1993, to date of judgment, in the amount of $33.15 for the total sum of $290.16; and

4. Plaintiff may file a Bill of Costs pursuant to 28 U.S.C. § 1924.

IT IS SO ORDERED.