Dr. Armando BARRETO, et al.,
Plaintiffs, Appellants,

v.

CITIBANK, N.A., et al.,
Defendants, Appellees.

No. 89–2016.

United States Court of Appeals,
First Circuit.

Heard June 6, 1990.

Decided July 6, 1990.

Eudoro Balmaceda, for appellants.

Nestor Duran, with whom McConnell, Valdes, Kelley, Sifre, Griggs & Ruiz–Suria, was on brief for Citibank, N.A.

Jorge L. Catala–Monge, with whom Catala & Rochet was on brief for Wilfredo Santiago Rivera.

Before BREYER, Chief Judge, and COFFIN, Senior Circuit Judge, and CAMPBELL, Circuit Judge.

PER CURIAM.

This appeal challenges an order of the district court dismissing plaintiffs' complaint for failure of counsel, though specifically ordered, to answer interrogatories and to appear for an Initial Scheduling Conference (ISC). The sanction imposed by the court was, on this record of inexcusable inaction, clearly within its discretion. We affirm.

The plaintiffs filed suit on April 17, 1989, alleging that defendant bank had negligently committed the "criminal act" of cashing a number of checks payable to one of the plaintiffs for professional services, such checks bearing forged endorsements. It is not contested that 32 checks and two money orders in the total amount of $40,-305.76 were involved. Of this amount, plaintiffs concede that they have received $28,500. They nevertheless sought $1,200,-000 in compensatory damages, 80 percent of which was to compensate the individual plaintiffs for mental anguish and 20 percent to compensate the conjugal partnership of two of the plaintiffs for "amounts not perceived." They also sought, despite our recognition in *Noble v. Corporacion Insuler de Seguros*, 738 F.2d 51, 54 (1st Cir.1984), that punitive damages are not allowable for this kind of case in Puerto Rico, $16,000,000 in punitive damages. Despite such an inflated beginning, the follow-up was virtually nonexistent.

On June 12, 1989, plaintiffs' attorney, Balmaceda, adverting to "important personal and business matters," called defendant bank's counsel and stated that he would be abroad for the next two months, until August 19. Simultaneously, he prepared, signed, and sent to attorney Abreu Elias an "informative motion." This document stated that he would be away from Puerto Rico temporarily and that attorney Abreu Elias would "take care of this case." The document was never signed by attorney Abreu Elias nor ever filed in court. Attorney Balmaceda shortly thereafter departed from Puerto Rico, despite the dis-

tinct possibility, if not clear likelihood, that the district court would call for an ISC within the next two months.

Predictably, on July 12 the district court called for an ISC on August 18, when counsel were expected to submit memoranda discussing their contentions, listing witnesses and describing desired discovery, and to be prepared to discuss settlement. Counsel were warned that failure to participate in good faith could result in sanctions.

Meanwhile, on June 15 defendant bank served interrogatories and a request for production of documents on plaintiffs through attorney Balmaceda, with a copy sent to attorney Abreu Elias. One month later, on July 14, Attorney Abreu Elias filed a motion for extension of time to answer interrogatories until August 27, reciting that Balmaceda would return during the last week of August and wanted to prepare the answers himself. The court denied this motion on July 24, ordering that answer be made forthwith "so that all parties will be prepared for the ISC set for August 18, 1989." Somewhat incredibly, four days later, attorney Abreu Elias filed another motion for extension, giving as justification the representation that his work in a federal criminal case was more extensive than expected. No ruling on this motion was forthcoming.

■ August 18 came and the ISC was held, with no counsel of plaintiffs present. On August 21 the court in a written order reciting the gist of the above, and noting that plaintiffs had not only failed to answer interrogatories but had failed to appear at the ISC though twice ordered to do so, found that such actions constituted "deliberate disregard of the express orders of the Court" and dismissed the complaint.

That the district court was well within its discretion in so acting is clear. What is perhaps a challenge beyond our capacity is to make it equally clear to plaintiffs and their counsel why this is so. For counsel argues that the property rights of his clients and his reputation have been seriously and adversely affected without a chance to be heard, and that in any event the sanctions were excessive in that the degree of fault differed as between the two counsel for plaintiffs, and that the sins of the attorney should not be visited upon the clients.

■ Such arguments evidence a complete lack of understanding of the now well established principle that discovery orders, other pre-trial orders, and, indeed, all orders governing the management of a case are enforceable under pain of sanction for unjustifiable violation. Trial judges have considerable discretion in the selection and imposition of sanctions. We review their actions only for abuse of that discretion. *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976). What lies behind the sanctioning power is not merely, or perhaps even principally, the desirability of punishing a party or counsel for dilatory actions or inaction, but the necessity of invocation of an extreme sanction, where justified, in order to deter others from similar conduct. *Id.* at 643, 96 S.Ct. at 2781. What we said in *Damiani v. Rhode Island Hospital*, 704 F.2d 12, 16 (1st Cir.1983) (footnote omitted), applies here: "[T]he plaintiff's attorney arrogated control of discovery to himself and changed the date of compliance to suit his own convenience and that of his client. If such conduct were condoned by a slap on the wrist, ... the District Court ... might well find the lawyers calling the tune on discovery schedules."

Plaintiffs' property rights and counsel's reputation have been adversely affected because such detriment was the inevitable byproduct of a proper invocation of the sanction of dismissal for serious and inexcusable disobedience of court scheduling orders. Plaintiffs' argument that, since the intents and circumstances attending the conduct of their two attorneys were different, the sanctions imposed on the attorneys cannot be same, miscarries. In the first place, the sanction, dismissal of the complaint, was levied on them. In the second place, if the argument is read as a plea that Balmaceda was less culpable than his replacement, Abreu Elias, and that therefore *his* case (i.e., plaintiffs' case) should not be

dismissed, the fact remains that Balmaceda chose his stand-in. Similarly, as for counsel's complaint that the sanction unfairly is borne by plaintiffs for counsel's dereliction, we can do no better than we did in *Damiani, supra*, 704 F.2d at 16, by quoting from *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962):

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.

*Affirmed.*