<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 97-2286

                 JOHN'S INSULATION, INC., ETC.,

                     Plaintiff, Appellant,

                               v.

            L. ADDISON AND ASSOCIATES, INC., ET AL.,

                    Defendants - Appellees.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF MASSACHUSETTS

        [Hon. Edward F. Harrington, U.S. District Judge]
        [Hon. Lawrence P. Cohen, U.S. Magistrate Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                 Bownes, Senior Circuit Judge,

                   and Stahl, Circuit Judge.  

                     _____________________

   Barry J. Byrnes for appellant.
   Paul M. Rezendes, with whom Nelson P. Lovins, Sarah T. Paineand Lovins & Metcalf were on brief for appellees.

                      ____________________

                      September 11, 1998
                      ____________________

         TORRUELLA, Chief Judge.  Plaintiff-appellant John's
Insulation, Inc., appeals from the dismissal of its complaint
against defendant-appellee L. Addison and Associates, Inc., and
from the default judgment entered on Addison's counterclaims
against John's Insulation.  John's Insulation also appeals from
several interlocutory orders.  Although the appeal from the
interlocutory orders presents some worrisome questions, we are
constrained to affirm the judgment.
I.  Background
         John's Insulation, Inc., an asbestos removal specialist,
was retained as a subcontractor by L. Addison and Associates, Inc.,
a plumbing contractor, to assist in the performance of certain fire
and safety work at a Veteran's Affairs Hospital located in Jamaica
Plains, Boston.  In April 1991, after experiencing delays and other
construction problems, John's Insulation filed a complaint in the
U.S. District Court for the District of Massachusetts against
Addison and the Hartford Casualty & Insurance Company (the
underwriter of the payment and performance bonds), alleging a claim
against Hartford under the Miller Act, 40 U.S.C.  270(a)-(d), and
breach of contract and quantum meruit claims under Massachusetts
law against Addison.  Addison, in turn, asserted three
counterclaims against John's Insulation based on breach of
contract.
         Several intervening events complicated the picture.  In
1994, John's Insulation filed a Chapter 11 petition for
reorganization in the United States Bankruptcy Court for the
Eastern District of New York.  All proceedings in the original suit
were automatically stayed.  Addison, however, filed a notice of
claim with the bankruptcy court for damages arising from John's
Insulation's alleged contract violations, and moved to modify the
stay to permit the district court action to proceed.  The
bankruptcy court granted the motion to modify the stay, allowing
Addison to assert its claims as a set-off to John's Insulation's
claims.  Any recovery beyond the set-off, however, would remain
subject to the stay.
         On the twelfth day of trial, September 22, 1995, the
district court declared a mistrial because it had determined, as a
matter of law, that the plaintiff's chief witness, John's
Insulation Secretary and Treasurer John Fenn, lacked any
credibility.  After the jury exited the courtroom, plaintiff's
counsel, Mr. Barry J. Byrnes, asked for the names and addresses of
all the jurors.  After being advised of Mr. Byrnes' request, the
court responded that no jurors could be interviewed without its
express permission, and that counsel would be held in contempt if
any attempts were made to interview the jurors without such
permission.  The counselor replied that he would research the law
on that issue and make a formal application for permission to
interview the jurors.  The court noted that any such motion would
be denied because the practice of the court was not to interview
jurors.  The court then said:  "My next ruling is that your motion
to appear before this Court is revoked."  Finally, the court also
noted that Fenn should not appear as a witness in any future trial
in this case.
         In a written order memorializing its bench rulings, the
district court held "as a matter of law that [Fenn] is absolutely
incredible and without sufficient personal knowledge of the events
concerning which he testified."  The court therefore declared a
mistrial, "in order that the plaintiff's cause of action be not
prejudiced, . . . [and] so that the plaintiff is able to present
his evidence before a new jury untainted by the witness Fenn's
incredible testimony."  Id.  Furthermore, the district court
revoked the authorization it had previously granted to Barry
Byrnes, the plaintiff's attorney, to appear pro hac vice.  Finally,
the district court stayed all further proceedings in the case
pending the resolution of John's Insulation's bankruptcy petition.  
The written order, however, did not indicate whether Fenn had been
permanently barred from appearing as a witness in any future
proceedings in this case.
         John's Insulation appealed these orders.  On February 28,
1996, a prior panel of this court dismissed, as a premature appeal
from interlocutory orders, the appeal as to all district court
orders except the order staying the proceedings until the
resolution of the appellant's bankruptcy case.  With regard to the
stay order, we directed the district court to specify its reasons
therefor.  On March 26, 1996, the district court responded to our
order, stating that it refused to lift the stay.  The full text of
the body of its answer reads as follows:
           To allow the plaintiff to proceed to trial
           while in Bankruptcy Court provides it with
           the tactical advantage over the defendants
           of being in a "no lose" situation, a
           status which the plaintiff has used to
           conduct itself in a most antagonistic and
           unprofessional manner toward the Court and
           toward the defendants during the course of
           these proceedings.  Such a manner might
           well be designed to cover up a case
           lacking in any merit.  In addition,
           plaintiff itself has moved in the United
           States Court of Appeals to stay the
           proceedings in the District Court.  It
           should also be noted that plaintiff's
           attorney Byrnes' permission to appear in
           the District Court has been revoked and
           plaintiff has failed to designate another
           attorney to represent it.  This Court
           shall not try this case as long as
           Attorney Byrnes continues to
           unauthorizedly appear as counsel of record
           for the plaintiff.

Upon receipt of the district court's answer, we vacated the stay
and remanded the case to the district court for further
proceedings.  In the meantime, John's Insulation filed a motion
requesting that the district court transfer the proceedings to the
U.S. Bankruptcy Court for the Eastern District of New York, in
which its bankruptcy case was pending.  On remand, the district
court denied the motion to transfer the case, and granted John's
Insulation's local counsel leave to withdraw from representing
John's, leaving it without an attorney of record.
         In November 1996, Addison moved to return the case to the
trial list and for an order requiring plaintiff's counsel to make
an appearance, on penalty of the dismissal of John's Insulation's
complaint and of entry of default judgment on Addison's
counterclaims.  Mr. Fenn responded to the motion by means of a
letter dated January 3, 1997, in which he stated that John's
Insulation had no intention of abandoning its complaint, and that
it was still searching for replacement counsel.   
         In March 1997, approximately one year after the stay had
been vacated and the case remanded to the district court, the court
held a conference in chambers, during which Mr. Fenn appeared on
behalf of John's Insulation to request additional time to obtain
new counsel.  The court granted John's Insulation until June 3,
1997, to retain replacement counsel, and denied Addison's request
to have the case returned to the trial list.  Mr. Fenn responded by
filing an affidavit in which he requested that, if John's
Insulation were unable to hire new counsel, and the court were to
dismiss its complaint, the counterclaims be transferred to the
bankruptcy court.  On May 20, 1997, the court scheduled a status
conference on July 7, 1997.  On May 30, 1997, Mr. Fenn wrote a
letter to the court requesting that the conference be rescheduled
because he had previously arranged a business trip for that date
and therefore would be unable to attend.  He also advised the court
that John's Insulation had been unable to retain an attorney due to
its financial situation, and requested additional time to hire an
attorney who would request a smaller retainer.  After the
defendants opposed the motion on the basis that a corporation, such
as John's Insulation, cannot be represented by a non-lawyer, and
that John's had been aware since September 1995 that it was
required to obtain new counsel, the district court denied the
request.
         At the status conference, no one made an appearance on
behalf of John's Insulation.  Three days later, the defendants
moved to dismiss John's Insulation's remaining causes of action and
for the entry of default judgment on their counterclaims.  The
district court granted the motion, advised that it would hold a
hearing to assess damages on Addison's counterclaims, and ordered
the defendants to submit documentation in support of their claim
for damages.  The district court did not indicate whether the
sanction was imposed under Fed. R. Civ. P. 37, 41(b), or 55(b)(2),
or, instead, pursuant to its inherent power to sanction abuses.  On
September 22, 1997, upon receipt of the documentation, the court
directed the entry of default judgment on Addison's counterclaims
in the amount of $734,825.87, plus pre-judgment interest at the
rate of 5.58%, and costs.
         John's Insulation now seeks review of the final orders
dismissing the complaint and entering default judgment on Addison's
counterclaims, as well as from a number of the district court's
interlocutory orders, including the order declaring a mistrial, the
order revoking Mr. Byrnes' authorization to appear pro hac vicebefore the court, and the order disqualifying Mr. Fenn from
testifying as an expert witness.
II.  Jurisdiction
         The notice of appeal in this case indicates that John's
Insulation is appealing from the judgment dated September 22, 1997,
"and each and every part thereof."  Because the judgment
conclusively settled all disputes in this case, it is a final
decision appealable as of right.  See Coleman v. American Red
Cross, 23 F.3d 1091, 1096 (6th Cir. 1994) (entry of judgment
dismissing complaint with prejudice for failure to prosecute is an
appealable final judgment); Enron Oil Corp. v. Diakuhara, 10 F.3d
90, 95 (2d Cir. 1993) (entry of judgment by default is an
appealable final judgment).  Accordingly, we have jurisdiction over
this appeal pursuant to 28 U.S.C.  1291.
III.  Scope of the Appeal
         Addison argues that the notice of appeal is insufficient
to provide us with jurisdiction over certain parts of the appeal.  
Relying on Fed. R. App. P. 3(c), which provides that "[a] notice of
appeal also must designate the judgment, order, or part thereof
appealed from," Addison contends that the absence of any reference
in the notice of appeal to any interlocutory orders deprives us of
jurisdiction to hear appeals from those orders.   
         Admittedly, the requirements of Rule 3(c) "are
jurisdictional in nature and their satisfaction is a prerequisite
to appellate review."  Smith v. Barry, 502 U.S. 244, 248 (1992);
see also Kotler v. American Tobacco Co., 981 F.2d 7, 10-11 (1st
Cir. 1992) (citing Smith).  On the other hand, as a general matter,
"[c]ourts will liberally construe the requirements of Rule 3."  
Smith, 502 U.S. at 248; see also Kotler, 981 F.2d at 11.  
Consequently, "noncompliance with 'mere technicalities' will not
defeat appellate jurisdiction . . . . so long as the litigant's
filing 'is the functional equivalent of what the rule requires.'"  
Kotler, 981 F.2d at 11.  Furthermore, "we do not examine the notice
in a vacuum but in the context of the record as a whole."  Kotler,
981 F.2d at 11.   
         Addison contends that, even taking the record as a whole
into consideration, the notice of appeal was insufficient to give
notice that John's Insulation sought review of the interlocutory
orders.  Since the purpose of Rule 3(c) is "to ensure that the
filing provides sufficient notice to other parties and the courts,"
Smith, 502 U.S. at 248, Addison asserts that John's Insulation's
failure to designate the interlocutory orders is more than
"noncompliance with [a] mere technicalit[y]," id.  
         Addison's argument is ultimately successful, but not for
the reason it puts forward.  Contrary to Addison's contention, it
has been uniformly held that a notice of appeal that designates the
final judgment encompasses not only that judgment, but also all
earlier interlocutory orders that merge in the judgment.  See,e.g.,
Tabron v. Grace, 6 F.3d 147, 153 n.2 (3d Cir. 1993); Williams v.
General Motors Corp., 656 F.2d 120, 125-26 (5th Cir. 1981); Cattinv. General Motors Corp., 955 F.2d 416, 428 (6th Cir. 1992); Glassv. Dachel, 2 F.3d 733, 738 (7th Cir. 1993); Employee Staffing
Servs. v. Aubry, 20 F.3d 1038, 1042 (9th Cir. 1994); Bowdry v.
United Airlines, Inc., 58 F.3d 1483, 1489 (10th Cir. 1995); see
generally 9 James W. Moore, et al., Moore's Federal Practice 203.17[3] at 3-92 & n.19 (1996); 9A Charles A. Wright, Arthur R.
Miller, and Edward H. Cooper, Federal Practice and Procedure 3949.4, at 67 & n.13 (1996).  Were this the end of our analysis,
Addison's argument would have to be rejected because all of the
prior orders were non-final unappealable orders which merged in the
final judgment.
         However, six circuit courts of appeals have recognized an
exception to the rule, holding that interlocutory rulings do not
merge into a judgment of dismissal for failure to prosecute, and
are therefore unappealable.  See, e.g., Marshall v. Sielaff, 492
F.2d 917, 919 (3d Cir. 1974) (interlocutory rulings did not merge
with judgment of dismissal with prejudice for failure to
prosecute); Hughley v. Eaton Corp., 572 F.2d 556, 557 (6th Cir.
1978) (same); DuBose v. Minnesota, 893 F.2d 169, 171 (8th Cir.
1990) (same); Huey v. Teledyne, Inc., 608 F.2d 1234, 1239 (9th
Cir. 1979) (same); Ash v. Cvetkov, 739 F.2d 493, 497 (9th Cir.
1984) (same, but dismissal without prejudice); cf. Sere v. Board of
Trustees of the Univ. of Illinois, 852 F.2d 285, 288 (7th Cir.
1988) (Rule 37(b) dismissal with prejudice for failure to complete
discovery and to attend a deposition); Bowe v. First of Denver
Mortgage Investors, 613 F.2d 798, 800-801 (10th Cir. 1980)
(commenting favorably on holding in Huey).
    One reason given for this exception is that the general
rule "that rulings on interlocutory orders are encompassed within
a subsequent final judgment and may be reviewed as part of that
judgment . . . [should be] inapplicable where adherence would
reward a party for dilatory and bad faith tactics."  Sere, 852 F.2d
at 288.  Similarly, in a passage often quoted in subsequent
decisions, the Third Circuit explained:
         If a litigant could refuse to proceed
         whenever a trial judge ruled against him,
         wait for the court to enter a dismissal
         for failure to prosecute, and then obtain
         review of the judge's interlocutory
         decision, the policy against piecemeal
         litigation and review would be severely
         weakened.  This procedural technique would
         in effect provide a means to avoid the
         finality rule embodied in 28 U.S.C.A.
          1291.  To review the district court's
         [interlocutory ruling] under the facts of
         this case is to invite the inundation of
         appellate dockets with requests for review
         of interlocutory orders and to undermine
         the ability of trial judges to achieve the
         orderly and expeditious disposition of
         cases.

Marshall, 492 F.2d at 919 (quoted in Sullivan v. Pacific Indemn.
Co., 566 F.2d 444, 445-46 (3d Cir. 1977); Huey, 608 F.2d at 1239;
Ash, 739 F.2d at 497; and Sere, 852 F.2d at 288).  The other reason
for the exception is that "by the dismissal of the suit [for
failure to prosecute or comply with a court order], any rulings
which preceded that action by the trial court are . . . rendered
moot."  Hughley, 572 F.2d at 557.   
    The Second and Fifth Circuits, however, have rejected the
Marshall exception.  See Gary Plastic Packaging Corp. v. Merrill
Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 178-79 (2d Cir.
1990) (order denying motion for class certification held to have
merged into final judgment resulting from class representative's
failure to prosecute its individual claim); Allied Air Freight,
Inc. v. Pan American World Airways, Inc., 393 F.2d 441, 444 (2d
Cir. 1968) (interlocutory orders in case dismissed without
prejudice for failure to prosecute held appealable); cf. Nichols v.
Mobile Bd. of Realtors, 675 F.2d 671, 675 (5th Cir. 1980) (noting
that the Marshall rule had apparently been rejected sub silentio in
a previous decision by another panel in the same circuit); Drake,
553 F.2d at 1187.  The analysis in Allied Air Freight relied on a
Supreme Court case in which the intentional use of a dismissal for
failure to comply with a court order was condoned as a means of
obtaining immediate appellate review of an interlocutory discovery
order.  See 393 F.2d at 444 (citing United States v. Procter &
Gamble Co., 356 U.S. 677, 680 (1958)).
    In Procter & Gamble, the defendants argued before the
Supreme Court that the Government's motion -- which requested that
if it were to violate the court's order to produce the grand jury
transcript, the district court should dismiss the complaint -- was
equivalent to a motion for voluntary dismissal, which at the time
was unappealable.  See 356 U.S. at 680.  The Supreme Court
disagreed, holding that the Government's unwavering opposition to
the underlying court order prevented the motion from being
characterized as one for voluntary dismissal.  Moreover, the Court
noted that although the Government could have tested the validity
of the order by other means, such as by subjecting itself to a
civil contempt finding, such means could lead to "unseemly conflict
with the District Court."  Id.  The Court thus saw nothing wrong
with the Government's decision to request that a final judgment be
entered as a means of obtaining immediate appellate review.  Id. at
681.
    In Allied Air Freight, the Second Circuit followed
Procter & Gamble in holding that the plaintiff's appeal from the
involuntary dismissal of their complaint permitted the court to
review prior interlocutory rulings.  See Allied Air Freight, 393
F.2d at 444.  In a later decision, the Second Circuit also
suggested that the factual premise behind the Marshall exception
may be invalid.  See Gary Plastic Packaging, 903 F.2d at 179.  The
court pointed out that even if a plaintiff invites dismissal for
failure to prosecute as a way of obtaining immediate review of an
otherwise-interlocutory order, there is little danger that the
policy against piecemeal appeals will be undermined on a large
scale.  Plaintiffs pursuing such an avenue of appeal risk
forfeiting their potentially meritorious claims each time, because
the appellate court could affirm the dismissal.  See id.  With such
a high price to be paid, there is little risk of abuse.
    We choose to follow the majority rule of Marshall.  
First, the analysis in Procter & Gamble and Allied Air Freightdepended in large part on the fact that voluntary dismissals were
not appealable at the time.  See 393 F.2d at 444.  It is no longer
the rule that voluntary dismissals are unappealable; to the
contrary, most circuits hold that voluntary dismissals, and
especially those with prejudice, are appealable final orders.  See
generally 15A Federal Practice and Procedure  3914.8, at 614-16
(citing cases); cf. Soto v. Flores, 103 F.3d 1056, 1059 n.1 (1st
Cir. 1997) (noting without discussion that plaintiff had
voluntarily dismissed her complaint in order to have a final
judgment from which she could appeal).  Consequently, a plaintiff
that deems an interlocutory ruling to be so prejudicial as to
deserve immediate review now has the alternative of dismissing the
complaint voluntarily.
    Indeed, currently the proper way to appeal an
interlocutory order is to move for a voluntary dismissal with
prejudice, instead of delaying the case until the district court is
forced to dismiss the case for failure to prosecute.  Gary Plastic
Packaging is likely correct in stating that there seems to be
little danger that the policy against piecemeal appeals will be
entirely undermined by a rule that permits plaintiffs to seek
review of interlocutory orders.  Our alternative to the Second
Circuit's rule, however, is not to entirely bar review of
interlocutory rulings, but instead to provide for review by means
of voluntary dismissal.  The claim made in Gary Plastic Packagingis as true of our alternative as it is of the Second Circuit's
rule.
    Furthermore, the validity of a dismissal for failure to
prosecute is entirely independent of the merits of prior
interlocutory decisions.  As one court stated:  
         It . . . follows that by the dismissal of
         the suit, any rulings which preceded that
         action by the trial court are thus
         rendered moot. . . . [O]n the contrary,
         [we] hold that the sufferance of a
         dismissal of a cause without prejudice is
         not to be employed as an avenue for
         reaching issues which are not subject to
         interlocutory appeal as of right.  

Hughley, 572 F.2d at 557 (rejecting both rationale and holding of
Allied Air Freight).  The purpose of a Rule 41(b) dismissal for
failure to prosecute, for example, is to penalize dilatoriness and
harassment of defendants.  See Link v. Wabash R.R. Co., 370 U.S.
626, 629 (1962); see generally 9 Federal Practice and Procedure 2370, at 346-47 (2d ed. 1995).  In affirming a judgment
dismissing a complaint for failure to prosecute or to comply with
the district court's orders, an appellate court is determining that
the plaintiff's lack of diligence in litigation deserved to be
sanctioned by having its complaint ejected from the courts,
regardless of the merits of the case.  Thus, if a complaint was
correctly dismissed for failure to prosecute, the fact that earlier
interlocutory rulings may have been erroneous is irrelevant.  SeeAl-Torki v. Kaempen, 78 F.3d 1381, 1386 (9th Cir. 1996) ("[t]here
is no good reason to allow [a] plaintiff to revive his case in the
appellate court after letting it die in the trial court").
    It is understandable that plaintiffs may sometimes find
that an interlocutory ruling has so damaged their case that seeing
it to trial would be a waste of resources.  However, in such
situations, the proper course of action is not to delay the
proceedings, but to file a motion for voluntary dismissal with
prejudice, stating explicitly that the purpose is to seek immediate
review of the interlocutory order in question.  Such a voluntary
dismissal has the virtues of giving the defendants and the district
court notice of the plaintiff's intentions, and of preventing
excessive delay.  The alternative -- to delay and delay until the
court loses patience and dismisses the complaint under Rule 41(b)
-- needlessly wastes the time and resources of all parties
involved.
    The dismissal and default judgment were imposed as a
sanction for John's Insulation's delay and failure to comply with
the court's orders.  Thus, regardless of the possibility that the
district court may have abused its discretion in its interlocutory
orders, a review of the merits of those orders is beyond the scope
of this appeal.

III.  Analysis
    As a preliminary matter, we note that the district
court's order of September 22, 1997, does not cite any legal
authority in support of its decision to enter judgment dismissing
the complaint and enter judgment by default on the counterclaim.  
The first question we face, therefore, is to determine if there is
any source of authority for the district court's action.
    "A district court has broad authority to . . . dismiss a
case for failure to obey . . . orders," Robson v. Hallenbeck, 81
F.3d 1, 2 (1st Cir. 1996).  One source of such authority is Fed. R.
Civ. P. 41(b).  On the other hand, "the rules of civil procedure do
not completely describe and limit the power of district courts."  
Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 11
(1st Cir. 1985).  Indeed, "[i]t has long been understood that
certain implied powers must necessarily result to our Courts of
justice from the nature of their institution, powers which cannot
be dispensed with in a Court, because they are necessary to the
exercise of all others."  Chambers v. NASCO, Inc., 501 U.S. 32, 43
(1990) (citations omitted).  Those inherent powers to sanction
parties for litigation abuses include the power to "act sua sponteto dismiss a suit for failure to prosecute," id. at 44 (citing
Link, 370 U.S. at 630-31), and to enter default judgment, seeBrockton Sav. Bank, 771 F.2d at 12.
    The order's lack of citation to the Rules of Civil
Procedure makes it difficult to conclude that the court was acting
pursuant to its authority under Fed. R. Civ. P. 41(b) to dismiss
the complaint for failure to prosecute.  Not even Addison's motions
requesting such sanctions identified the rules pursuant to which
the court could impose them.  Because there is no conflict between
the authority granted by these rules and the court's inherent
powers, however, we may assume that the district court employed its
inherent powers in an attempt to vindicate the integrity of the
proceedings in this case.
    We review a district court's exercise of its inherent
powers only for abuse of discretion.  See Chambers, 501 U.S. at 44;  
National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S.
639, 642 (1976).  In doing so, we must remain aware that "the most
severe in the spectrum of sanctions provided by statute or rule
must be available to the district court in appropriate cases, not
merely to penalize those whose conduct may be deemed to warrant
such a sanction, but to deter those who might be tempted to such
conduct in the absence of such a deterrent."  National Hockey
League, 427 U.S. at 643.
     Even if the provisions of the Rules of Civil Procedure
that permit the imposition of sanctions for litigation abuses are
not strictly applicable here, they may nevertheless be used by
analogy to guide our review of the district court's actions.  
Admittedly, "[i]t is hard to find an area of law in which the
governing rules are, and probably have to be, so vague."  Robson,
81 F.3d at 2.  Thus, on the one hand "[c]laims of abuse of
discretion under Rule 41(b) typically have not received a
sympathetic ear from us," Benjamin v. Aroostook Med. Ctr., Inc., 57
F.3d 101, 107 (1st Cir. 1995) (citation omitted), because "case
management is a fact-specific matter within the ken of the district
court," Robson, 81 F.3d at 2-3.  On the other hand, we do not
rubber-stamp the decisions of the district court, see Benjamin, 57
F.3d at 107, because "[d]ismissal with prejudice is a harsh
sanction, . . . which should be employed only when a plaintiff's
misconduct has been extreme, . . . and only after the district
court has determined that none of the lesser sanctions available to
it would truly be appropriate."  Estate of Sols-Rivera v. United
States, 993 F.2d 1, 2 (1st Cir. 1993) (citations omitted).  In
determining whether a plaintiff's misconduct has been extreme, "we
engage in an open-ended balancing test,"  Benjamin, 57 F.3d at 108,
taking into consideration:  
         [whether] there is extremely protracted
         inaction, disobedience of court orders,
         ignorance of warnings, contumacious
         conduct, . . . or some other aggravating
         circumstance such as prejudice to the
         defendant, glaring weakness in the
         plaintiff's case, and the wasteful
         expenditure of a significant amount of the
         district court's time.

Estate of Sols-Rivera, 993 F.2d at 2-3 (citations omitted); see
also Robson, 81 F.3d at 2 (providing a non-exhaustive list of
pertinent considerations).  The review of orders entering default
judgment is guided by similar factors.  See Affanato v. Merrill
Bros., 547 F.2d 138, 140 (1st Cir. 1977).
    After reviewing the record of the proceedings before the
district court, we cannot say that the court abused its discretion
in ordering, as a sanction for John's Insulation's protracted delay
and repeated violation of court orders, the dismissal of the
complaint and the entry of default judgment on the counterclaim.  
First, John's Insulation's failure to retain new counsel delayed
the proceedings in this case for more than a year.  At the time
that the district court dismissed John's Insulation's complaint and
entered default judgment on Addison's counterclaims, John's
Insulation had been without legal representation for at least 15
months.  During that time, this 1991 case remained at a standstill.  
Addison moved twice for an order returning the case to the trial
calendar and explicitly requiring John's Insulation to obtain new
counsel on pain of dismissal and entry of default judgment.  See In
re Victor Publishers, Inc., 545 F.2d 285, 286 (1st Cir. 1976)
(corporations cannot be represented by persons not licensed to
practice law).  The district court denied both requests for
sanctions, but in March 1997, it ordered John's Insulation to
obtain new counsel within the following three months.
    At the end of the three months, no successor counsel had
made an appearance on behalf of John's Insulation.  The district
court then scheduled a status conference to be held in chambers on
July 7, 1997.  Mr. Fenn responded on behalf of John's Insulation,
writing a letter requesting that the conference be postponed
because he was scheduled to be in Chicago on that date.  The
letter, however, provided no explanation for John's Insulation's
inability to retain a new attorney other than to state that it was
"due to financial reasons stemming from its bankruptcy.  Attorney's
[sic] that I have contacted request a sizeable retainer which
John's Insulation, at this time, is not in a position to
guarantee."  The district court denied the motion for continuance,
but no one appeared on the appointed date on behalf of John's
Insulation.  Addison then requested the imposition of sanctions for
the third time, and the district court granted the request.  
    Under the circumstances of this case, the delay alone
suffices to support the district court's choice of sanctions.  But
in addition to the delay, John's Insulation failed to comply with
several other court orders.  The most significant is John's
Insulation's failure to appear at the conference scheduled by the
district court even though it was on notice that the district court
had specifically rejected its request for a continuance.  It is
axiomatic that a party may not ignore a district court order with
impunity.  See, e.g., Goldman, Antonetti v. Medfit Int'l, Inc., 982
F.2d 686, 692 (1st Cir. 1993) (dismissal with prejudice for failure
to attend pretrial and settlement conference); Barreto v. Citibank,
N.A., 907 F.2d 15, 16 (1st Cir. 1990) ("discovery orders, other
pre-trial orders, and, indeed, all orders governing the management
of a case are enforceable under pain of sanction for unjustifiable
violation").  John's Insulation's explanation for its failure to
appear at the conference -- that Mr. Fenn had a prior business
commitment in Chicago -- is inadequate.  For one thing, Mr. Fenn's
unavailability was irrelevant, because the court had made clear
that John's Insulation was no longer to be represented by non-
lawyers.  For another, John's Insulation could have at least sent
a representative to appear at the conference, if only to indicate
that notwithstanding its failure to comply with the order to obtain
counsel, it was still interested in prosecuting the case.
    Although dismissal and default judgment are the two most
severe sanctions available, we do not deem the district court's
decision to impose them in this case to have been an abuse of
discretion.  "[T]he law is well established in this circuit that
where a noncompliant litigant has manifested a disregard for orders
of the court and been suitably forewarned of the consequences of
continued intransigence, a trial judge need not first exhaust
milder sanctions before resorting to dismissal."  Figueroa-Ruiz v.
Alegra, 896 F.2d 645, 649 (1st Cir. 1990).  The purpose of
sanctions, moreover, is not merely to penalize violations of court
procedures, but also to deter future violations by other parties,
and thus sanctions do not have to be strictly proportional to the
severity of a given party's violations.  See National Hockey
League, 427 U.S. at 643.
    Finally, we reject John's Insulation's argument that, the
complaint having been dismissed, the district court lost
jurisdiction to hear the counterclaim asserted by Addison because
the automatic stay renders void all unauthorized post-petition
proceedings.  See 11 U.S.C.  362(a)(1).  The bankruptcy court
lifted the automatic stay "to permit the action . . . , including,
without limitation, the counterclaim[] asserted by Addison . . . to
continue to a final judgment," but that "any affirmative recovery
by Addison on the Counterclaim, other than by way of setoff, shall
remain subject to the automatic stay and the provisions of the
Bankruptcy Code."  We read the bankruptcy court order to have
lifted the stay for the purpose of obtaining a final judgment on
both the complaint and the counterclaim.  Of course, because the
complaint was dismissed, the amount of the setoff is exactly zero.  
Consequently, the district court was permitted to determine the
amount that Addison was entitled to recover on its counterclaim,
but the bankruptcy stay will prevent Addison from collecting on
that judgment except as the bankruptcy court may permit.
IV.  Conclusion
    For the reasons explained above, we affirm the judgment
below dismissing John's Insulation's complaint, as well as the
order for the entry of default judgment on Addison's counterclaim.

</body>

</html>