**Maria De Lourdes ORTIZ–RIVERA,
et al., Plaintiffs,**

v.

**MUNICIPAL GOVERNMENT OF TOA
ALTA, et al., Defendants.**

Civ. No. 01–2542(JP).

United States District Court,
D. Puerto Rico.

March 19, 2003.

Ricardo Ruiz–Díaz, Ruiz & Reyes Law Offices, Fajardo, P.R., Ramón L. Walker–Merino, San Juan, P.R., for Plaintiff.

Grisselle González Negrón, Faccio & Pabón Roca, Roberto Sueiro Del Valle, Roberto E. Ruiz Comas, San Juan, P.R., for Defendants.

Jeannette M. López, Pinto Lugo, Oliveras & Ortiz, San Juan, P.R., for American Intl. Insurance Co.

## OPINION AND ORDER

PIERAS, Senior District Judge.

### I. INTRODUCTION

The Court has before it Co–Defendant Medical Geriatrics and Administrative Services, Inc.'s ("MGAS") "Motion to Compel Discovery & For Sanctions" (**docket No. 38**); Plaintiffs' opposition thereto (docket No. 50); Co–Defendant MGAS' reply to Plaintiffs' opposition [1] (docket No. 54); Co–Defendant MGAS' "Motion to Preclude Plaintiffs From Utilizing Experts For Failure To Comply with Case Deadlines" (**docket No. 40**); Plaintiffs' opposition thereto (docket No. 52); Co–Defendant MGAS' reply to Plaintiffs' opposition [2] (docket No. 58); Co–Defendant MGAS' "Motion to Preclude Plaintiffs From Utilizing Testimony of Officer Carlos Perales" (**docket No. 41**); Plaintiffs' opposition thereto (docket No. 51); and Co–Defendant MGAS' reply to Plaintiffs' opposition [3] (docket No. 57) [4].

While Defendants have filed three separate motions concerning Plaintiffs' discovery violations, the Court must look at them as not individual alleged offenses, but rather in the framework of the entirety of the discovery process. Thus Defendants motions have created a gestalt, where the whole is greater than the sum of its parts. For sake of clarity, the Court shall outline each motion's contentions separately. However, for its analysis the Court shall view the motions as a whole.

1. Which the Court hereby **ACCEPTS AS TENDERED**.

2. Which the Court hereby **ACCEPTS AS TENDERED**.

3. Which the Court hereby **ACCEPTS AS TENDERED**.

4. The Court additionally has Co–Defendants Municipality of Toa Alta and Admiral Insurance Co.'s separate motions titled "Motion to Join And Or Adopt Motions Filed by Medical Geriatrics and Administrative Services, Inc., On Or Around October 16th 2002" (docket Nos. 56, 60). The Court hereby **GRANTS** said motions and hereby **SHALL** consider the aforementioned pending motions as pertaining to all Defendants in the above captioned complaint.

## II. DISCUSSION

### A. CASE OVERVIEW

#### 1. Uncontested Facts

a. On November 12, 2000 between 12:05 and 12:10 a.m., Luis Manuel Espada Mojica ("Espada") was transported in an ambulance to the Piña Center for Diagnosis and Treatment (CDT), following an accident between an automobile and the "four-track" vehicle he was riding.

b. The ambulance report stated that Espada displayed multiple injuries, an open wound, cranial trauma, a Rule Out ("R/O") of pneumothorax, pain, fracture and was designated as a major trauma case.

c. The CDT's medical records state that Espada was a 26 year old male who was involved in a "four-track" accident where he sustained bodily trauma, including head trauma, and a frontal wound.

d. The CDT's record states that Espada was also experiencing difficulty breathing and abdominal pain.

e. The medical examination portion of the CDT's medical record describes an alert, disoriented and disorganized patient with wounds, reactive pupils, no edema, regular heart rhythm, right lung rhonchus, and a soft depressible abdomen. The provisional diagnostic was left arm trauma and wound, head wound, head trauma, and a R/O of pneumothorax.

f. The CDT physician recorded that no chest tube, or x-rays were available and that the suction machine lacked hose.

g. Arrangements were made to transport Espada via Aeromed (helicopter ambulance) to the Puerto Rico Medical Center.

h. The CDT physician recorded that while waiting for Aeromed, Espada went into respiratory arrest, was intubated, and was transported via ambulance to the Bayamón Regional Hospital (HURRA). Nurses notes state that at 12:30 a.m. Espada went into cardiorespiratory arrest and was intubated by a Mr. Santiago.

i. The CDT's records indicate that Espada left the CDT at 1:30 a.m. and was transported via ambulance to HURRA.

j. Espada was accompanied by Dr. Reyes from the CDT in his ambulance transport to HURRA.

k. HURRA medical records state that Espada was dead upon his arrival to HURRA at 2:20 a.m.

l. A contract exists between the Municipality of Toa Alta and Medical and Geriatrics Administrative Services, Inc., concerning the Center for Diagnosis and Treatment in the Barrio Piñá section of the Municipality of Toa Alta.

#### 2. Plaintiffs' theory of the case

Plaintiff's allegations are that Defendants failed to stabilize Luis Espada before he was transferred to Bayamón Regional Hospital in violation of the Emergency Medical Treatment and Active Labor Act (EMTALA).

#### 3. Defendants' theory of the case:

##### a. Co–Defendants the Municipality of Toa Alta and Admiral Insurance Company:

Co–Defendants allegations are that Defendants enjoy the privilege of Eleventh Amendment Immunity from suits brought under EMTALA. Defendants additionally argue that the Commonwealth should be brought in and not the municipality because the funds to run the CDT come from the Commonwealth. Furthermore, Defendants further argue that the CDT is apart from the Municipality and is privately run. Finally, Defendants argue that EMTALA doesn't apply in the current case because it is designed to prohibit the dumping of patients without insurance, which is not the case at hand.

##### b. Co–Defendant Medical and Geriatrics Administrative Services, Inc.:

Co–Defendant argues that since the CDT is not attached to a hospital it cannot be defined as an emergency room. In addition,

it argues that Medicare defines CDTs as medical offices and not hospitals. For this reason, Defendant claims that EMTALA does not apply to its facilities.

### B. DEPOSITION OF OFFICER PERALES

Officer Carlos Perales is the officer that attended to the accident which is the catalyst of the present litigation. This Court, in its Initial Scheduling Conference Order of July 24, 2002 ("ISC Order"), established September 23, 2002 as the date for Officer Perales' deposition (docket No. 28). Defendants allege that days before the aforementioned deposition was taken, Plaintiffs' counsel informed Defendants, for the first time, that Officer Perales had been previously deposed on February 21, 2002.[5] Defendants additionally allege that a transcript of that deposition was not made available until the morning of Officer Perales' deposition. Defendants allege that Plaintiffs' independent deposition of Officer Perales violates Fed.R.Civ.P. 26(d).

In response, Plaintiffs acknowledge that they did indeed depose Officer Perales on February 21, 2002, prior to serving any Defendant with the summons and complaint for the current litigation. However, Plaintiffs contend that Defendants were informed of the February deposition during the Rule 26 disclosure meeting held on July 11, 2002, which Plaintiffs allege Co–Defendant MGAS did not attend. Additionally, Plaintiffs argue that no improper or willful motives prompted the initial taking of Officer Perales deposition and that if they indeed violated Fed.R.Civ.P. 26(d), this Court should deem such violation as harmless.[6] Finally, Plaintiffs argue that since Defendants deposed Officer Perales on September 23, 2002, any harm that could have been inferred by the previous deposition was cured by the subsequent deposition.

▬ Rule 26(d) states in pertinent part as follows:

Except in categories of proceedings exempted from initial disclosure under Rule 26(a)(1)(E), or when authorized under these rules or by order or agreement of the parties, a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f).

Fed.R.Civ.P. 26(d) (West 2002). As Plaintiffs have acknowledged the timing of the deposition, there can be no doubt that the taking of Officer Perales' deposition was clearly in violation of Rule 26(d). While this Court does have discretion as to the application of this rule, only the most obviously compelling reasons are sufficient to justify a departure from the rule. *See* 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2045 (2d Ed.1994). Furthermore, Plaintiffs never sought leave from this Court to take Officer Perales' deposition prior to executing service of the summons and complaint upon Defendants. Plaintiffs have not put forth a compelling argument as to why the deposition was taken so prematurely. Instead, Plaintiffs argue that the deposition should merely constitute a harmless error. The Court will analyze these arguments in the analysis section below.

### C. EXPERT WITNESS REPORTS

Defendants contend that Plaintiffs were ordered by this Court to submit the curriculum vitae and expert reports of Dr. Julio Albino and Dr. Jorge Freyre to Defendants on or before October 7, 2002. Defendants state that Dr. Albino's report was not received until October 13, 2002, and did not comply with Fed.R.Civ.P. 26(a)(2)(b). Defendants claim that this violation is egregious being that Dr. Albino's report was dated July 7, 2002. Defendants state that Plaintiff failed to submit Dr. Freyre's report. Instead, Defendants claim they received Dr. Freyre's preliminary calculations on Novem-

---

5. The Court **NOTES** that Defendants were not served with summons and the Complaint until March 7, 2002 (docket Nos. 4 and 5).

6. Plaintiffs argument for the Court's broad discretion in determining whether their violation should be deemed as harmless is founded in jurisprudence surrounding Fed.R.Civ.P. 26(a).

However, Defendants allege that Plaintiffs deposition of Officer Perales violates Fed.R.Civ.P. 26(d). The Court does not infer that its discretion is any less for a violation of Rule 26(d) than it is for a violation of Rule 26(a) but rather notes that Plaintiffs supporting argument is not directly on point for Defendants' allegations.

ber 12, 2002, but that no report was ever tendered.

Plaintiffs, in opposition, state that Dr. Albino's report was seven days late because it was originally drafted in Spanish and that the certified English translations of his report caused the late delivery. Plaintiffs claim that they inadvertently failed to send the attachments to Dr. Albino's report and that these attachments are what kept the report from conforming to Rule 26. They additionally argue that Defendants failed to notify them of this deficiency in Defendants' letter dated October 13, 2002. In concern of Dr. Freyre's report, Plaintiffs acknowledge that his expert report has not been delivered but claim that the delay has been caused by factors beyond Plaintiffs' control. More specifically, Plaintiffs claim that because the information required for the creation of Dr. Freyre's report was in the continental United States the delay could not have been foreseen or anticipated. Finally, Plaintiffs argue that Defendants would not be harmed by the late filing of either of the expert reports.

■ On July 15, 2002, this Court celebrated an Initial Scheduling Conference with the parties. As part of the Conference, the Court ordered that "Plaintiffs **SHALL** submit the curriculum vitae and expert reports of Dr. Julio Albino and Dr. Jorge Freyre to Defendants, on or before **October 7, 2002**" (docket No. 28) (emphasis in original). Plaintiffs never moved for an extension of time to submit either of the reports. Instead, Plaintiffs took their own liberty to submit the expert reports at their leisure. There can be no doubt that Plaintiffs' submissions were tardy. Whether they were late by one week or greater is not the issue. Plaintiffs' argument that Dr. Albino's July 7, 2002, report was filed late due to the delay of certified English translations, seems specious at best. Plaintiffs had exactly three months from the date of the creation of the report to have the report translated. The Court finds this to be ample time to translate the documents. Furthermore, any rationale that Plaintiffs may have for the delay in filing the expert reports could have been better substantiated if Plaintiffs had attempted to request an extension of time. However, Plain-

tiffs did not take even these most minimal of efforts. The Court is not painted on the wall and should be kept abreast of circumstances, such as the one's alleged by Plaintiffs, so as to avoid the types of problems with which the Court is confronted with today.

Concerning the disclosure of expert testimony, Fed.R.Civ.P. 26(a)(2)(C) states that "[t]hese disclosures shall be made at the times and in the sequence directed by the court." Under *Rule 37(c)*, the district court's latitude is wide. *See Poulin v. Greer,* 18 F.3d 979, 984 (1st Cir.1994). For failure to make the specified discovery, the district court is directed to preclude as evidence "any witness or information not so disclosed," and "[i]n addition to or in lieu of this sanction, the court, on a motion and after affording an opportunity to be heard, may impose other appropriate sanctions ... [which] may include any of the actions authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule." Fed.R.Civ.P. 37(c). These latter provisions specifically provide for "prohibiting that party from introducing designated matters into evidence" (subparagraph (b)(2)(B)) and for "dismissing the action" (subparagraph (b)(2)(C)). "The range of sanctions provided in Rule 37(c), from the most harsh (total exclusion and dismissal of the case) to more moderate (limited exclusion and attorney's fees), gives the district court leeway to best match the degree of noncompliance with the purpose of Rule 26's mandatory disclosure requirements." *Ortiz–López v. Sociedad Española de Auxilio Mutuo y Beneficencia de Puerto Rico,* 248 F.3d 29, 34 (1st Cir.2001); *see also Klonoski v. Mahlab,* 156 F.3d 255, 269 (1st Cir.1998) ("[T]he new rule [37(c) ] clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion.")

■ As Plaintiffs' late filing of their expert reports violates not only this Court's order but also Rule 26(a)(2)(C), this Court is within its discretion to implement the sanctions designated under Rule 37(c). How this Court chooses to implement these sanctions will be discussed in the analysis section below.

## D. INTERROGATORIES

■ Defendants contend that they notified Plaintiffs with a First Set of Interrogatories and request for Production of Documents on April 29, 2002. Defendants claim that Plaintiffs informed Defendants that they would answer the interrogatories once the discovery conference between the parties was held. Defendants claim that the Rule 26(f) conference was held on July 11, 2002. Defendants claim that they sent a communication dated September 16, 2002 per the provisions of Local rule 311.11 requesting that the required responses be tendered. In addition, Defendants claim that on September 17, 2003, Plaintiffs' counsel assured Defendants that answers would be tendered within 30 days. At the time of Defendants motion [7], Plaintiffs had yet to tender the promised answers.

Plaintiffs argue that on November 8, 2003, they tendered the requested answers and as such Defendants' motion should not be granted. Plaintiffs acknowledge the receipt of Defendants' interrogatories on May 1, 2002. Plaintiffs argue that there was a Fed. R.Civ.P. 26(d) discovery moratorium in effect until the Rule 26(f) meeting was held [8]. Furthermore, Plaintiffs argue that one of Defendants' attorneys did not appear at the conference in July. Nevertheless, Plaintiffs acknowledge the September 17, 2002, discussion but claim that Defendants misinterpret that as a Local Rule 311.11 conference. Instead, Plaintiffs contend that they told Defendants that they would answer in a timely fashion, which they took to be subsequent to Defendants' deposition. Finally, as a defense, Plaintiffs argue that Co–Defendant MGAS hadn't answered Co–Defendant Municipality of Toa. Alta's set of interrogatories that were tendered on August 23, 2002 by the time of Plaintiffs' opposition [9].

As a preliminary matter, the Court chooses to overlook the fact that Plaintiffs' opposition to Defendants' motion was filed more than twenty days after Defendants' motion was filed. *See* Local Rule 311.5. Fed. R.Civ.P. 36(a) provides that each matter of which an admission is requested is "... admitted unless, within thirty (30) days of service of the requests or within such shorter or longer time as the Court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter signed by the party or the party's attorney." *See An–Port, Inc. v. MBR Industries, Inc.,* 772 F.Supp. 1301, 1305 (D.Puerto Rico 1991) (Pieras, J.). In addition, the Court has already outlined the sanctions it can impose under Fed.R.Civ.P. 37(b). *See infra; see also National Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976).

Plaintiffs acknowledge that the submission of their answers to Defendants' interrogatories is woefully tardy. In fact, Plaintiffs only defense is a "they are late too" defense. Even if Co–Defendant MGAS was late in submitting its answer to Co–Defendant the Municipality of Toa Baja's interrogatories, the Court fails to see how this in any way bears upon the fact that Plaintiffs were over 100 days late in submitting their answers. Furthermore, the Court cannot fathom why Plaintiffs' counsel would believe that he had until after Defendants' deposition to tender an answer to interrogatories.

The choice of an appropriate sanction is within the Court's sound discretion. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 45, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991). The Court shall determine its implementation of sanctions for this violation coupled with the other two aforementioned violations in the following section.

## E. ANALYSIS

■ Defendants, in addition to requesting an individual remedy for each motion, have requested this Court to dismiss Plaintiffs' claim with prejudice for their repetitive dis-

---

**7.** October 16, 2003.

**8.** The Court finds the use of the word "moratorium" to be misplaced. More specifically, the Court finds the answering of interrogatories before a Rule 26(f) meeting to be beneficial to all parties to become more familiar with the facts and the allegations of the case.

**9.** November 8, 2003.

covery violations. It is evident that at the very least, the Court should strike the February 21, 2002, deposition testimony of Officer Perales from being presented at trial; strike the expert witness testimony and report of both Dr. Albino and Freyre; and accept as tendered all of Defendants' interrogatories and requests for admissions. However, these sanctions would only be appropriate if each case were truly isolated. They are not. Instead, the Court must look at them in their totality. As stated at the beginning of this opinion, the whole is greater, or in this case worse, than the sums of its parts. Plaintiffs' repeated violations are egregious and must be addressed, not only for the purposes of this case but in deterrence of possible repetition in future cases.

As described above, the Court has a whole arsenal of potential sanctions that it could impose. In pertinent part, Fed.R.Civ.P. 16(f) provides:

> If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). . . .

Fed.R.Civ.P. 16(f). The orders provided for in Fed.R.Civ.P. 37(b)(2) include orders "striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or **dismissing the action or proceeding or any part thereof**, or rendering a judgment by default against the disobedient party." Fed.R.Civ.P. 37(b)(2)(C) (emphasis added); see also Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc., 982 F.2d 686, 691 fn. 13 (1st Cir.1993).

The First Circuit has repeatedly held that dismissal of a case with prejudice for violation of a judicial order can occur without consideration of lesser sanctions. See, e.g., Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir.2002); Top Entertain-ment Inc. v. Ortega, 285 F.3d 115, 119 (1st Cir.2002); Figueroa Ruiz v. Alegria, 896 F.2d 645, 649 (1st Cir.1990); see also Link v. Wabash R.R. Co., 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Although dismissal ordinarily should be employed only when a plaintiff's misconduct is extreme, see Tower Ventures, 296 F.3d at 46; Enlace Mercantil Int'l, Inc. v. Senior Indus., Inc., 848 F.2d 315, 317 (1st Cir.1988), disobedience of court orders, in and of itself, constitutes extreme misconduct (and, thus, warrants dismissal), see Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir.1987).

This sanction is especially applicable to a court's scheduling order. To manage a crowded calendar efficiently and effectively, a trial court must take an active role in case management. "Scheduling orders are essential tools in that process—and a party's disregard of such orders robs them of their utility." See Tower Ventures, 296 F.3d at 46. For that reason, litigants have an "unflagging duty to comply with clearly communicated case-management orders." Rosario–Díaz v. González, 140 F.3d 312, 315 (1st Cir.1998). A "court's efforts at stewardship are undermined where, as here, a party cavalierly flouts the court's scheduling orders." Unexcused misconduct of that stripe places the choice of sanction (up to, and including, dismissal) within the sound discretion of the district court. Tower Ventures, 296 F.3d at 46; see also Top Entertainment, 285 F.3d at 118; Barreto v. Citibank, N.A., 907 F.2d 15, 16 (1st Cir.1990).

In the spirit of searching for the truth, all attorneys practicing before this Court are expected to be well versed in pretrial practice. They are encouraged to read Judicial Economy and Efficiency Through the Initial Scheduling Conference: The Method, 35 Cath. U.L.Rev. 943 (1986) authored by the undersigned Judge, and peruse the Civil Justice Reform Act, codified at 28 U.S.C. §§ 471–482 (West 2001), in order to understand the necessity of adhering to orders concerning pretrial discovery. The federal docket is replete with costly time consuming litigation. The importance of this Court's Initial Scheduling Conference (hereinafter "ISC") and its resulting Order is to stream-

line this litigation and reduce the cost and delay that so frequently characterizes it. *See Comments of Senator Joseph Biden to the Civil Justice Reform Act,* S. 2027, 136 Cong. Rec. § 407–04 *S414, and *Report of the Advisory Group of the Civil Justice Reform Act of 1990,* which was co-authored by the undersigned Judge, and to which the undersigned Judge also served as Judicial Chairman. The Civil Justice Reform Act is the basis of this Court's Initial Scheduling Conference. *See generally Civil Justice Reform Act,* 28 U.S.C. §§ 471–482 (West 2001); *Comments of Senator Joseph Biden, supra,* and the *Report of the Advisory Group of the Civil Justice Reform Act of 1990, supra,* Sec. VI.2. Plaintiffs' failure to tender its expert witnesses' reports by the date established in this Court's scheduling order. could be grounds enough for dismissal of a complaint. However, the Court is not dealing with a single violation.

■ The Court must not only look at Plaintiffs' repeated violations in the current case. The Court is also concerned with the prevention of such violations in future cases. The sanction of dismissal "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League,* 427 U.S. at 643, 96 S.Ct. at 2781; see also *Marx,* 929 F.2d at 10; *Goldman,* 982 F.2d at 692; *Barreto,* 907 F.2d at 16. Conduct which may warrant dismissal of a claim with prejudice includes " 'disobedience of court orders, [disregarding] warnings, [and] contumacious conduct....' " *Figueroa Ruiz,* 896 F.2d at 648 (quoting *Cosme Nieves,* 826 F.2d at 2).

It is clearly evident that the circumstances in the current case warrant the implementation of the full wrath of this Court's sanctioning powers. Plaintiffs have taken a deposition before even serving Defendants, Plaintiff have flippantly disregarded this Court's scheduling order by not submitting their expert witnesses' reports on time and failing to even attempt to receive an extension of time from the report, and finally Plaintiffs took more than 100 days since the time of the parties' Rule 26(f) meeting to answer Defendants' request for interrogatories. Plaintiffs have failed to recognize and heed the rules, regulations and Court orders that establish the discovery process for practice in the federal court system. This procedure cannot be taken lightly, for it is the very foundation of our federal civil legal system. *See generally Civil Justice Reform Act,* 28 U.S.C. §§ 471–482. Plaintiffs must be penalized for their blatant disregard for the fundamentals of this system. For this reason, the Court hereby **GRANTS** Defendants' motions and hereby **DISMISSES** Plaintiffs' claims against Defendants with prejudice.

## III.  CONCLUSION

For the aforementioned reasons, the Court hereby **DISMISSES** Plaintiffs' claims against all Defendants in the above captioned complaint **WITH PREJUDICE**.

**IT IS SO ORDERED**.